**SIMS MOTOR TRANSPORT LINES, INC., Plaintiff,**

v.

**UNITED STATES** of America and Interstate Commerce Commission (Holland Motor Express, Inc., Doyle Freight Lines, Inc., C. A. Conklin Truck Line, Inc., Saginaw Transfer Company, Inc., Kramer Bros. Freight Lines, Inc., Interstate Motor Freight System, Wolverine Express, Inc., and Regular Common Carrier Conference of American Trucking Associations, Inc., interveners), Defendants.

**No. 57 C 1377.**

United States District Court
N. D. Illinois, E. D.
Nov. 30, 1959.

Halfpenny & Hahn, Chicago, Ill., for plaintiff.

Robert Tieken, U. S. Atty., Chicago, Ill., for defendants.

Robert W. Ginnane, Carroll T. Prince, Jr., Washington, D. C., for Interstate Commerce Commission.

Petit, Olin, Overmyer & Fazio, Chicago, Ill., for interveners.

Before DUFFY, Circuit Judge, and CAMPBELL and LA BUY, District Judges.

CAMPBELL, District Judge.

This action is brought and the jurisdiction of this Court is invoked under the provisions of Title 49 U.S.C.A. § 305 (g), Title 5 U.S.C.A. § 1009 and Title 28 U.S.C. §§ 2321 through 2323 inclusive, to set aside and annul orders of defendant Interstate Commerce Commission in Docket No. MC–C–1674, Sims M. Transport Lines, Inc., Revocation of Certificate, 66 M.C.C. 553 (1956), 72 M.C.C. 355 (1957), and 76 M.C.C. 467 (1958). In the administrative proceedings, the Commission determined that plaintiff's existing authority to transport "iron and steel articles", "iron and steel products", and "iron and steel, and articles made thereof", does not authorize the transportation of "tractors, traction engines, tools and parts for tractors and traction engines, and used foundry machinery". The petition for leave to intervene has heretofore been granted. Title 28 U.S.C. § 2323; Fed.Rules Civ.Proc. Rule 24, Title 28 U.S.C.

The Commission, on its own motion, by an order dated July 13, 1954, commenced an investigation proceeding in its Docket No. MC–C–1674, to determine whether Sims was transporting commodities not authorized by its certificate of public convenience and necessity which had been issued on March 12, 1952, in Docket No. MC–18738. This certificate is, in effect, a consolidation of four previously issued certificates. The history of these proceedings is described in the Commission's 1957 report (72 M.C.C. 355, 357–358):

"On January 13, 1941, a certificate was issued in No. MC–18738 to respondent's predecessor, Elmer Sims, pursuant to an informally processed 'grandfather' clause application. This certificate authorized the transportation, over a specified regular route, of iron and steel products between Chicago, Ill., and South Bend, Ind. On April 13, 1944, in No. MC–2982, as a result of another informally processed 'grandfather' clause application, a certificate was issued to Otto Abshier, doing business as Otto Abshier Trucking Co. This certificate authorized the transportation, over irregular routes, of iron and steel products from Chicago to points in Ohio, Kentucky, and Indiana. On May 24, 1943, in No. MC–52139, a certificate was issued to respondent's predecessor, Schiller Trucking Co., Inc., authorizing the transportation over irregular routes, of iron and steel, and articles made thereof, (1) between points in the Chicago commercial zone, on the one hand, and, on the other, points in a described portion of Michigan, and Cleveland and Mansfield, Ohio, and (2) between Detroit, Mich., and Warren and Youngstown, Ohio. On November 2, 1948, in No. MC–18738 (Sub-No.8), a certificate was issued to respondent's predecessor, Elmer W. Sims, doing business as Motor Transport Lines, pursuant to an application for an extension of operating rights. This certificate authorized the transportation, over irregular routes, of iron and steel articles from points in the Chicago commercial zone to points in Indiana, Ohio, and Kentucky. By virtue of various purchases, approved in proceedings not important here, the authority contained in all of these certificates was consolidated and is embraced in the single certificate issued to respondent on March 12, 1952."

The matter was referred to an examiner of the Commission for a formal hearing. Plaintiff was represented by counsel in the hearing, and it introduced evidence, cross-examined witnesses, and filed formal pleadings. The Commission's Bureau of Inquiry and Compliance participated in the proceeding, and its counsel also introduced evidence, cross-examined witnesses, and filed pleadings. After the examiner issued his recommended report and order, Sims filed exceptions and the Bureau replied, which were considered by Division 1 of the Commission. On March 13, 1956, Division 1, acting for the Commission, issued its report (66 M.C.C. 553) in which it found that certain commodities had been transported by Sims beyond the scope of its certificate, and it ordered Sims to cease and desist from such carriage on or before May 11, 1956. On reconsideration, the entire Commission considered Sims' petition, the reply of the Bureau, and it also, upon its own motion, reopened the four dockets described in the 1957 report (72 M.C.C. at pp. 357–358), in order to have available all possible information to determine the sense in which the commodities in question were used at the time of the various grants. On July 15, 1957, in its report on reconsideration (72 M.C.C. 355), the Commission found that nothing in Sims' operating authority authorized transportation of tractors, traction engines, tools, and parts therefore, or used foundry machinery. Accordingly, it ordered Sims to cease and desist from such carriage of these goods from and after September 3, 1957. Thereafter, on August 13, 1957, plaintiff filed its complaint before this Court, seeking a temporary injunction against enforcement of the Commission order, and seeking to set it aside by a permanent injunction. On August 26, 1957, however, Sims petitioned the Commission again to reconsider its decision, and the Court, by order dated October 14, 1957, ordered this action held in abeyance until the Commission should finally dispose of the second petition for reconsideration. On May 27, 1958, the Commission issued its second report on reconsideration (76 M.C.C. 467), in which it again ordered Sims to cease and desist from the questioned transportation on or before July 17, 1958. After Sims amended its complaint to attack the second order on reconsideration, the Commission, by order dated July 7, 1958, postponed the effective date of the cease and desist order until further order of the Commission.

The basic issue before the Court, as it was before the Commission, is a simple one: Namely, does the plaintiff have the right to transport tractors, parts of tractors and used foundry machinery from Chicago and Melrose Park to Ohio, Kentucky and Indiana under a certificate which authorizes the transportation of "iron and steel products", "iron and steel articles", and "iron and steel, and articles made thereof"? The scope of judicial review to which plaintiff is here entitled has been determined by the Supreme Court of the United States. In Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 499, 2 L.Ed.2d 484, it is stated:

"In ascertaining [the meaning of words used in operating authority issued by the Commission], we are not given *carte blanche*; just as '[t]he precise delineation of an enterprise which seeks the protection of the "grandfather" clause has been reserved for the Commission,' Noble v. United States, 319 U.S. 88, 93, [63 S.Ct. 950, 952, 87 L.Ed. 1277] (1943), subsequent construction of the grandfather permit by the Commission is controlling on the courts unless clearly erroneous."

In footnote 4 of that same opinion, 355 U.S. at pages 558, 559, 78 S.Ct. at page 499, it is stated:

"It is true, of course, that limitations on Commission power to modify motor carrier permits, established in § 212(a) of the Act, [49 U.S.C.A. § 312(a)], cannot be by-passed under a guise of interpretative action. Commission interpretation of the meaning of a permit, being simply a

definitive declaration of what rights existed from the very beginning under the permit, cannot be equated with modification, however, unless found to be clearly erroneous."

Plaintiff, in urging that the orders of defendant Commission be set aside and annulled, makes the following arguments:

"(1) The Commission erred in

"(a) Reopening proceedings without assigning such matters for further hearing or permitting the filing of briefs.

"(b) In its résumé of its reopening proceedings.

"(2) The Commission erred in relying upon 'iron and steel articles' list as set forth in the Descriptions case.

"(3) The report erroneously deems the commodity description 'iron and steel products', 'iron and steel and articles made thereof' to be so patently unambiguous as to preclude all inquiry into the intent of the framers of the certificate descriptions.

"(4) The Commission erred in limiting the commodities to be transported to correspond precisely with those specifically mentioned in other proceedings.

"(5) The Commission erred in failing to give due consideration to the interpretation as given by the industry.

"(6) The Commission erred in failing to follow in the disposition of this case its own definition of 'products'.

"(7) (a) Plaintiff has engaged in the questioned transportation for twenty-five years.

"(b) Plaintiff purchased certain operating rights with the approval of the Commission."

We now consider plaintiff's first argument, subsections (a) and (b), which apparently attacks the procedure of the Commission. Specifically, plain-tiff appears to contend that the Commission's action is contrary to Title 49 U.S.C.A. § 312(a); that the Commission examined the four basic proceedings upon which plaintiff's presently held certificate is based without proper hearing; that the findings of the Commission based upon this examination are erroneous; and finally, that these erroneous findings were persuasive to the Commission's final opinion.

The short answer to plaintiff's first contention is that the orders plaintiff asks us to set aside take no rights from it, but merely interpret what rights it had from the beginning. It is apparent from the record that defendant Commission has not sought to diminish or modify, under the guise of interpretative action, or otherwise, the operating authority of plaintiff, but has rather endeavored to provide a reasonable and fair construction of the same. Since we are here concerned with the review of an interpretation proceeding, neither Section 312(a), nor Watson Bros. Transportation Co. v. United States, D.C., 132 F.Supp. 905 are applicable. Jones Truck Lines, Inc. v. United States, D.C., 146 F.Supp. 697, 703. In regard to plaintiff's contention that the Commission had no right to examine the proceedings behind the certificate without proper hearing, the following statement of the Supreme Court in the Nelson case, supra, 355 U.S. at page 558, 78 S.Ct. at page 499, 2 L.Ed.2d 484, footnote 3 is of particular interest:

"Absent patent ambiguity, it is well established that the Commission will not refer to the underlying grandfather operation * * * Even if such reference is made here, however, * * * [t]hat background in nowise supports appellant's position here * * *."

In other words, the Supreme Court does not appear to preclude the possibility of going behind a certificate, even though it is not considered patently ambiguous which is exactly the case here. The Commission in its 1957 report, 72

M.C.C. 355, at page 359, makes the following statement:

"Contrary to the claims of respondent, there is nothing patently ambiguous in the certificate which applicant holds, and for that reason there was no necessity for going back of it in order to determine what was intended. Nevertheless we have done so, and, as seen, have found nothing to suggest, even remotely, any right to, or any intent to grant, any of the commodities covered by the issues in the title proceeding."

We conclude that the Commission's decision as to the meaning of the certificate is reached independently by interpretation of the certificate at face value, while the treatment accorded underlying background more or less approximates the holding in the Nelson case. Plaintiff's attempt to discredit the Commission's evaluation of underlying background by reference to certain portions of the four basic proceedings re-examined by the Commission must fail in that the out-of-context fragments selected by plaintiff are, for the most part, misleading, and, in no way affect the evaluation of the entire record. It follows that the contentions of plaintiff in regard to the examination of underlying background by the Commission are without merit.

We now consider plaintiff's second argument.

■ In Descriptions in Motor Carrier Certificates, 61 M.C.C. 209, the Commission established commodity lists under class or generic headings specifying the commodities to be transported thereunder which were to be used in describing the commodity scope of certificates to be issued to motor carriers of property in the future. While it was expressly stated that such commodity lists would be binding only on future certificates, it is axiomatic that the definitions of commodity descriptions established by the Commission were based upon the general understanding of these terms within the motor carrier industry. One of the generic classifications dealt with by the Commission in the Descriptions case was "iron and steel articles". The Commission, after extensive hearings participated in by numerous motor carriers and interested parties, expressly found at Page 245, that "the phrase 'iron and steel articles' is understood in transportation circles to mean a list of rough or semifinished articles made from iron and steel". It is true that this generic classification has been interpreted to embrace certain simple, finished products of uncomplicated design, such as wire garment hangers, or knocked-down steel houses. Atlanta-New Orleans Motor Freight Co. v. Eagle Motor Lines, Inc., 69 M.C.C. 257; Deaton Truck Lines, Inc., Common Carrier Application, 43 M.C.C. 585. However, it is clear from the Descriptions case and subsequent proceedings that tractors, traction engines and foundry machinery are much too complicated to be included in the generic classification, "iron and steel articles".

As pointed out by the Commission in the 1957 report, 72 M.C.C. 355, at page 359: "Although not controlling they (commodity lists in the Descriptions case) also may properly be considered in construing certificates previously issued in prior cases * * *." The Commission did not rely on the Descriptions case as being determinative, but rather noted it as one of several factors for proper consideration. We find no error in the Commission's consideration of the Descriptions case.

■ As to plaintiff's third argument, it is clear from the record, from transportation parlance and from various cited cases that there is nothing patently ambiguous in plaintiff's certificate.

As to plaintiff's fourth argument, this contention has been dealt with in regard the first argument where we held that the treatment of underlying background here approximates the consideration given underlying background in the Nelson case, supra. As such, there is no error.

■ We now consider plaintiff's fifth argument.

There is little merit to plaintiff's claim that the testimony of its supporting wit-

nesses was ignored since the Commission in its 1957 report, 72 M.C.C. 355, 360, states that it has "given full consideration" to that testimony. The weight to be accorded that testimony is an exclusive function of the Commission, so long as it does not act arbitrarily, capriciously or in clear error. Loving v. United States, D.C., 32 F.Supp. 464, 467. It is only logical that the Commission, which is appointed by law and informed by experience to interpret the certificate issued by it, should be free to draw upon its own accumulative experience in reaching a decision. National Labor Relations Board v. Seven-Up Bottling Co., 344 U.S. 344, 349, 73 S.Ct. 287, 97 L.Ed. 377. The scope of the Commission's examination in this cause, as indicated by the record, is exhaustive as to the industry and when considered in the light of the testimony of plaintiff's witnesses, we hold that the action of the Commission was not arbitrary, capricious or clearly erroneous.

In regard to plaintiff's sixth contention, the Supreme Court of the United States in Virginian Ry. Co. v. United States, 272 U.S. 658, stated at pages 665, 666, 47 S.Ct. 222, at page 225, 71 L.Ed. 463 that:

"This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it."

Furthermore, we find that the proceedings cited by plaintiff such as the Deaton Truck Lines case, supra, discussed in relation to plaintiff's second argument, are consistent with the Commission's interpretation of plaintiff's certificate. 1958 Report, 76 M.C.C. 467, 472, 473.

We now consider plaintiff's seventh argument, subsections (a) and (b).

It is well established law that plaintiff may not raise the doctrines of estoppel or laches against the United States. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 225–227, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283. Nor can plaintiff assert that its transportation of the items in question over a period of years renders such transportation legal today. Andrew G. Nelson, Inc. v. United States, supra. Obviously then, if at all, plaintiff's argument must bear upon the intention of the Commission in issuing the specific grants of authority here in question. It is agreed that plaintiff did transport the items in question prior to 1935. However, the record indicates that such shipments were in some cases not only isolated and infrequent, but they also differed in geographical location from the specific grants of authority in question here. The Commission in its 1957 report, 72 M.C.C. 355, having re-examined all the evidence offered in the four basic proceedings, presents a detailed summary of that record and then concludes at page 359:

"There is nothing of evidence in any of the basic proceedings which have been reviewed which could support a finding that when the various certificates or any of them were issued it was contemplated or intended that respondent's predecessors were being granted authority to transport tractors, traction engines, tools and parts for such tractors and traction engines, or used foundry machinery, or that they understood they were obtaining such authority."

In any event, if plaintiff believes that the scope of its certificate is too restrictive when considered against its background, its remedy is to petition the Commission to reopen the grandfather proceedings. Andrew G. Nelson, Inc. v. United States, supra, 355 U.S. at pages 561, 562, 78 S.Ct. at pages 500, 501, 2 L.Ed.2d 484. This proceeding is concerned only with the interpretation of the certificate as it now exists.

We conclude that the terms, "iron and steel articles", "iron and steel products" and "iron and steel, and articles made thereof" have been narrowly construed within the steel and transportation in-

**120**

dustry. They have never comprehended finished products of any degree of complexity or manufacture. 1958 Report, 76 M.C.C. 467, 471–472. Their meaning has historically related to and embraced the rough and semifinished articles of iron and steel produced by the steel industry. We find that the Commission's unanimous determination that tractors and foundry machinery are not iron and steel articles or products, is not arbitrary, capricious or clearly erroneous, but, is, on the contrary, wholly reasonable.

The orders of the Interstate Commerce Commission are affirmed.

The complaint is dismissed.