GENERAL MOTORS CORPORATION,
Plaintiff-Appellant,

v.

UNITED STATES of America, and Inter-
state Commerce Commission,
Defendants-Appellees,

and

The Alabama Great Southern Railroad
Company et al., Intervening
Defendants-Appellees.

No. 14594.

United States Court of Appeals
Sixth Circuit.

Feb. 17, 1962.

Aloysius F. Power, Walter R. Friz-
zell and E. J. McGratty, Jr., Detroit,
Mich., for General Motors Corp.

William H. Orrick, Jr., Asst. Atty.
Gen., Morton Hollander, David L. Rose,
Attys. Dept. of Justice, Washington, D.
C., and Lawrence Gubow, U. S. Atty.,
Detroit, Mich., for the United States.

Arthur J. Cerra, Asst. Gen. Counsel,
Robert W. Ginnane, Gen. Counsel, Wash-
ington, D. C., for Interstate Commerce
Commission.

J. Edgar McDonald, New York City,
for the Alabama Great Southern R. Co.,
and others.

Before McALLISTER, CECIL and
WEICK, Circuit Judges.

WEICK, Circuit Judge.

The action in the District Court was to
set aside and annul an order of the Inter-
state Commerce Commission adverse to
General Motors Corporation which had
filed a complaint for reparations before
the Commission alleging that it had been
overcharged on shipments of mixed car-
loads of household appliances from Mor-
aine, Ohio to Miami, Florida. About 150
railroad companies intervened in the ac-
tion. Jurisdiction of the District Court
to review the order of the Commission
was claimed to have been conferred by
Title 28 U.S.C. §§ 1336, 1398 and Title
49 U.S.C.A. § 17(9).

The District Judge handed down an
opinion and order in which he held that
he had no jurisdiction in the case. He
nevertheless considered the merits of
the case as if he had jurisdiction and
held that there was a rational basis for
the order of the Commission and that
it should be sustained. Mississippi Val-
ley Barge Line Co. v. United States, 292
U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260.
He dismissed the complaint. General

Motors has appealed to this Court from the order of dismissal.

The Commission now concedes that the District Court had jurisdiction to review its order denying reparations. The United States, which was a defendant in the case, filed a brief in which it asked for a reversal of that part of the judgment of the District Court which denied jurisdiction, but took no position on the merits of the case.

In our opinion, the fact that General Motors elected under Title 49 U.S.C.A. § 9 to make complaint to the Commission instead of the Court did not preclude it from obtaining judicial review of an adverse order of the Commission. This is implicit in the decision of the Supreme Court in United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 which held that Congress never intended to vest final jurisdiction in the Commission and that its orders were subject to judicial review. We do not believe it makes any difference that in the present case only the issue of reparations was involved before the Commission. As to this the Supreme Court said:

"Accordingly, we hold that § 9 does not impair the right of shippers to obtain judicial review of adverse Commission orders under § 41(28) merely because the order is sought as a basis for reparations." Id. p. 440, 69 S.Ct. p. 1418.

See also: Great Lakes Steel Corp. v. United States, 337 U.S. 952, 69 S.Ct. 1530, 93 L.Ed. 1753; Union Pacific Railroad Co. v. Price, 360 U.S. 601, 615, 618, 79 S.Ct. 1351, 3 L.Ed.2d 1460.

In our judgment, the District Court erred in holding that it had no jurisdiction.

This brings us to a consideration of the merits of the case. As we see it, our function is limited to a determination whether the order of the Commission was supported by substantial evidence and correctly applied the law. Great Lakes Steel Corp. v. United States, 220 F.2d 751 (CA 6), cert. denied 350 U.S. 821, 76 S.Ct. 47, 100 L.Ed. 734.

There was no dispute between the parties over the facts in the case. The representative shipment consisted of a mixed carload of cooling boxes, drying machines, refrigerators and electric stoves. The railroads had computed the freight rates on the shipment applying old exceptions tariffs and ratings which are published for each article in the shipment when shipped in straight carload quantities and had been in force prior to May 30, 1952. There was no carload exception rating. This resulted in a charge of $546.60 which the railroads collected for the shipment. General Motors claims the rates should be computed on new uniform freight classification and rates which became effective on May 30, 1952. The new class rates rated each item shipped separately, but had a mixed carload rating (Class 55) which was lower. If the charges for the shipment had been computed under the mixed carload rating they would have amounted to $507.94.

This is shown by the application of the rates to the representative shipment as follows:

|  | Uniform Classification Rating | Exceptions Rating | Rate ¢ CWT | Charge |
|---|---|---|---|---|
| Cooling Boxes . . . . . | (55) | 45 | 234 | $468.84 |
| Drying Machines . . | (60) | 47½ | 248 | 17.48 |
| Electric Stoves . . . . | (45–60) | 40 | 209 | 60.28 |
| Charge based on Exceptions Ratings |  |  |  | $546.60 |
| Above Articles in |  |  |  |  |
| One Car |  |  |  | $507.94 |
| (Mixed Carload) . . | 55 | None | 215 |  |

The only question in the case was which one of the two tariffs applied to the shipment, i. e., the old exceptions tariff and rates or the new uniform classification ratings and new class rates.

The railroads had established the new uniform class rate scale and a uniform class rate schedule to govern those rates on May 30, 1952 in compliance with orders of the Commission. The Commission had made extensive readjustments of classifications and underlying class rate structures and a uniform classification was ordered prepared and applied throughout the United States. Uniform classification ratings were not prescribed by the Commission, but were left for the railroads to establish. The proceedings before the Commission did not involve commodity rates nor exception rates or ratings.

It was contemplated that the exception rates and commodity rates would ultimately be worked into the new uniform classification and uniform class rate scale by the railroads. This was a task of some magnitude which would involve considerable work and would take time to evolve. In order to preserve the exception ratings until this could be done the railroads published a new rule, Item 300–B, which provided as follows:

NON-APPLICATION OF CLASS RATES WHERE A COMMODITY RATE CLASSIFICATION EXCEPTION OF COLUMN RATING IS IN EFFECT.

Class rates published herein from and to all points via all routes are not applicable on any article or commodity when there is in effect a commodity rate, classification exception or column rating between the same points via any route on such article or commodity.

Before this rule became effective it was changed to read as follows:

Class rates published in tariff, as amended, will not apply where there is in effect on a given shipment a commodity rate, classification exception or column rating between the same points via any route.

The reason for the change was that it was thought the words "on any article or commodity" were ambiguous and might prevent the application of uniform class rates on carload shipments of any article or commodity if there were exceptions applicable on less than carload shipments.

The Commission in considering this rule said:

The defendants' objective in publishing item 300 was to remove any possible alternation of the uniform class rates where exceptions ratings were established, and the original phrasing of the provision makes that fact abundantly clear. The question then is, did the substitution of 'on a given shipment' for 'on any article or commodity' so alter the meaning of the provision as to warrant a determination that the original objective also was intended to be changed. Bearing in mind the reason for the amendment of the language, we think that a fair and reasonable interpretation of the provision is that where an exceptions rating or ratings (in the case of mixed-carload quantities) were in effect 'on a given shipment,' the uniform class rates could not be considered in determining the applicable charges.

Shippers in other proceedings had previously sought to persuade the Commission to require the railroads to alternate the old exceptions ratings and rates with the new uniform classification and rates and to apply the lower basis or require cancellation of the old exceptions class rates, but the Commission denied such relief.

It is further claimed that neither the Commission or the District Court gave any consideration to Item 5 (Exception to the mixed-carload rule 10 in the Uniform Freight Classification.) This Item states "Except as otherwise provided. * * *" It was otherwise provided

236

in Item 300–B and hence Item 5 has no application.

The Commission, in holding that the railroads were correct in applying the old exceptions tariffs and rates, construed the applicable tariff provisions in the light of their history and what they were intended to accomplish. We think its decision was supported by substantial evidence and that it correctly applied the rules of law. There was certainly a rational basis for the conclusion which it reached as was held by the District Court. Mississippi Valley Barge Line Co. v. United States, supra.

The judgment of the District Court upholding the order of the Commission and dismissing the complaint is, therefore affirmed.