PRICE–WATSON COMPANY, an Illinois corporation, Plaintiff,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Defendants.

Elgin, Joliet & Eastern Railway Company, Gulf, Mobile and Ohio Railroad Company, Chicago, Burlington & Quincy Railroad Company and The New York Central Railroad Company, Intervening Defendants.

No. 67 C 834.

United States District Court
N. D. Illinois, E. D.
July 18, 1968.

Gould & Reichert, Cincinnati, Ohio, Irwin S. Baskes, Chicago, Ill., for plaintiff.

Thomas A. Foran, Robert W. Ginnane, Gen. Counsel, Washington, D. C., Henry F. Rush, Jr., Atty., Interstate Commerce Commission, Washington, D. C., for defendants.

W. Gerald Thursby, Chicago, Ill., W. A. Kimbrough, Jr., Mobile, Ala., for intervening railroads.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PERRY, District Judge.

This action to set aside and annul orders of the Interstate Commerce Commission (hereinafter referred to as "the Commission") having come on for hearing on April 5, 1968, before this court upon the plaintiff's complaint and the defendants' Answer thereto, and the court having received in evidence a certified copy of the record of the proceedings before the Commission, now, after reviewing said record in its entirety, and after hearing the oral arguments of counsel for the respective parties and after consideration of said arguments and of the written briefs of counsel, the court makes and enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact.

1. Plaintiff is Price-Watson Corporation, a Chicago scrap broker. Defendants are the United States of America and the Commission. Intervening defendants are the Elgin, Joliet & Eastern Railway Company; Gulf, Mobile and Ohio Railroad Company; Chicago, Burlington & Quincy Railroad Company; and the New York Central Railroad Company, hereinafter called the intervening railroads.

This action was brought by the plaintiff under 28 U.S.C. § 1336, 49 U.S.C. §§ 9 and 17(9), and 5 U.S.C. § 706, to set aside the orders of the Commission, Division 2, Acting as an Appellate Division, entered March 27, 1967, in its docket No. 34620, Price-Watson Company v. Elgin, Joliet and Eastern Railway Company, et al., 329 I.C.C. 736. In its order the Commission dismissed plaintiff's complaint seeking to recover alleged overcharges from the intervening railroad defendants for the transportation of "cast iron buttons" from Chicago, Illinois, to the plant of Laclede Steel Company at Alton, Illinois. The Commission determined that the buttons were iron bearing slag, properly classifiable as "iron or steel scrap, having value

for remelting purposes only" (hereinafter "scrap iron") under the intervening railroads' tariffs, and not slag bearing recoverable iron classifiable as "slag" as contended by plaintiff. The effect of this determination is to deny plaintiff recovery for the alleged transportation overcharges. The Commission also found that the transportation charges collected by the intervening railroads were not shown to be unjust or unreasonable.

The proceeding before the Commission was initiated on August 2, 1965, by a complaint wherein plaintiff alleged that "the collection by the defendant carriers of charges in excess of the rates set forth in the tariffs for the movement of slag was illegal and in violation of Sections 1(6) and 6(7) of the Interstate Commerce Act [49 U.S.C. §§ 1(6) and 6(7)]."

The proceeding was handled under modified procedure pursuant to Rules 1.-45 and 1.54, inclusive, of the Commission's General Rules of Practice pursuant to an order of the Commission, Commissioner Freas, dated August 4, 1965 (served August 10, 1965). Following submission of evidence in the form of verified statements and a deposition and written arguments by all parties in support of their respective positions, the proceeding was assigned to a Commission hearing examiner for recommendation of an appropriate order accompanied by the reasons therefor.

The examiner's report and order, served August 5, 1966, recommended that the complaint be dismissed for the following reasons:

(1) It is clear that the blast furnace buttons here involved are in fact iron bearing slag rather than slag bearing iron. The iron comprises so much the larger proportion of the mass that it would be a strained and unnatural use of the word to describe the material as slag. When the slag pits are gone over and the buttons are recovered, the purpose and result of the operation is to recover scrap iron suitable

only for remelting. (329 I.C.C. at 740)

\* \* \* \* \* \*

(2) Upon all of the evidence, the examiner finds that the rate charged was applicable and that it has not been shown to have been unjust or unreasonable. (329 I.C.C. at 741)

After considering plaintiff's exceptions to the examiner's report and the replies thereto, the Commission's Rates and Practices Review Board found that the statement of facts, conclusions and findings of the examiner were correct in all material respects. By Decision and Order dated January 5, 1967 (329 I.C.C. 736), the Review Board affirmed and adopted the same as the findings and conclusions of the Commission and dismissed plaintiff's complaint. A subsequent petition for reconsideration was denied by Division 2 of the Commission, Acting as an Appellate Division, by its order of March 27, 1967 (served April 4, 1967). Plaintiff filed its complaint in this Court proceeding on May 18, 1967, and the defendants' joint answer was filed on July 22, 1967.

2. Plaintiff's argument in brief before this Court is that the Commission erred in its determination primarily because the cast iron buttons are removed from a slag dump; they do not look like other types of scrap metal; they are contaminated by other materials; they require preliminary processing; their use is different from that of scrap iron in that, unlike scrap iron, they are not useable by direct charging into an open hearth furnace; and that the existing specifications of scrap metal does not contain specifications for cast iron buttons. At oral argument plaintiff asserted, for the first time either before the Commission or the Court, that it had been denied a fair hearing in that certain underlying documents had not been supplied to it by the witness for Laclede.

3. The basic issue before this Court for determination is whether the Commission reasonably determined that "cast iron buttons" was properly classified as "scrap iron" rather than "slag".

4. The Commission found that:

a. slag is a non-metallic dross of the steel making process having a commercial value, if at all saleable, of from $1.00 to $2.50 per net ton.

b. Cast iron buttons are formed when iron particles, which are either trapped in the slag or skimmed off with the slag from the molten iron in a blast furnace, precipitate into a solid mass in the bottom portion of skimming ladles or rail cars designed to transport slag from the furnace to the slag dumps. They are recovered from the slag dumps of various steel manufacturers by use of bulldozers and electro-magnets. The cast iron buttons recovered and shipped by plaintiff had an overall iron content of not less than 82%.

c. Cast iron buttons were used by the purchasing steel mill in two ways: either as a charge for a cupola furnace or by charging them directly into an open hearth furnace (about 10% of the total amount purchased). Cast iron buttons make up to 2% of the charge in an open hearth furnace at a given heat and are used in lieu of other cold scrap iron. Up to 40% of the charge of a cupola furnace could be cast iron buttons. When used at the cupola furnace roughly 50% of the buttons, some of which weigh up to 10 tons, require reduction in size so that they could more easily fit into the mouth of the cupola furnace. The slag is not separated from the scrap iron but the entire mass is charged into the furnaces.

d. Cast iron buttons were sold during the period of time involved to the purchasing steel mills for about $26.75 a gross ton. Other scrap metal prices varied from about $12 to $62 a gross ton.

e. In 1951, during the Korean Emergency, the Office of Price Stabilization, under a definition of iron and steel scrap (defined as "all ferrous materials, either alloyed or unalloyed and which iron or steel is a principal component,

which are the waste or industrial fabrication, or objects that have been discarded on account of obsolescence, failure or any other reason, when sold to a consumer"), established prices for cast iron buttons as scrap metal.

f. Lastly, the purchasing steel mill in the instant proceeding required that the descriptions on the bill of lading should be as "iron or steel scrap for remelting purposes" and its purchasing order referred to the fact that cast iron scrap not meeting certain specifications would be rejected.

5. The Commission also found that the scrap iron rate applicable on the articles transported was not shown to be unreasonable or unjust. The Commission found in its order that the cast iron buttons averaged 130,345 pounds per carload; often moved in multiple car lots; in open top equipment; was generally not susceptible to loss and damage; had a destination value of $36.75 per ton; moved at least 267 miles; and cost plaintiff $278 per car to transport. The Commission concluded that plaintiff's attempted comparison of this transportation with so-called average scrap iron movements in official territory during 1962 of 104,400 pounds per carload for a distance of only 84 miles at a cost to the shippers of only $185 per car failed to show that the rate charged was unreasonable. The Commission also concluded that an attempted comparison of the applicable scrap iron rate with other rates (under which no traffic was shown to have moved) failed to show the applicable rate unreasonable.

## Conclusions of Law.

1. The Court has jurisdiction of the parties and the subject matter in this cause. 28 U.S.C. § 1336 and 5 U.S.C. § 706. Roach Appelton Manufacturing Company v. United States, 265 F.Supp. 568 (N.D.Ill.1967).

2. The task of this Court in reviewing the assailed actions of the Commission is limited and well-defined: If the orders complained of lie within the scope of the statute which the Commission is empowered to administer and enforce and are based upon substantial evidence, this Court may not set them aside or modify them, even though it may have decided otherwise originally and even though the orders may be against the weight of the evidence. 5 U.S.C. § 706; Illinois Cent. R. Co. v. United States, 101 F.Supp. 317, 327 (N. D.Ill.1951).

3. The classification of freight has been variously defined by the Commission as "a rate-making scheme devised for the purpose of according the same rate to all commodities of a like character from a transportation standpoint", Hires Condensed Milk Co. v. P. R. R. Co., 38 I.C.C. 441, 447 (1916); "a matter of comparison of all the commodities that move as freight and the assignment of ratings such that each shall bear its fair share of the transportation burden", Classification of Canned Goods, 98 I.C.C. 166, 176 (1925); and "a determination of reasonable relations between commodities, with groupings of kindred articles." National Electric Mfrs. Assn. v. Atchison, T. & S. F. Ry. Co., 289 I.C. C. 125, 132 (1953).

4. It is clear that there is more than substantial evidence of record to support the Commission conclusion that cast iron buttons are properly classified as scrap iron. The Commission clearly considered those contentions made by plaintiff concerning the nature of the commodity and its use, including weighing that evidence of plaintiff's metallurgists that the "buttons" were not recognizable as scrap iron, because of foreign material could not be used in an open hearth furnace without first being processed in a cupola furnace, and were similar in all respects to slag. Plaintiff itself admits that not all scrap looks alike and Laclede, contrary to the statements of plaintiff's metallurgists as to the need for preliminary melting in the cupola furnace, charged substantial tonnage of the buttons directly into its open hearth furnace.

5. As to the allegations that the material was similar to slag, plain-

tiff's metallurgist first made this assertion in his opening affidavit on the basis of two samples of a single button having less than 14% iron content. The average iron content of buttons which Laclede purchased was 82%. The Commission clearly considered plaintiff's affidavits and accorded them the weight to which they were deemed entitled, Sims Motor Transport Lines, Inc. v. United States, 183 F.Supp. 113 at 119 (N.D.Ill. 1959), affirmed per curiam, 362 U.S. 637, 80 S.Ct. 1076, 4 L.Ed.2d 1019 (1960). Additionally, in this case, the weight which the Commission is required to give expert testimony is greatly diminished by the well-established maxim that in interpreting a classification as in interpreting a tariff the terms used must be taken in the same sense in which they are generally understood and accepted. United States v. Northern Pac. Ry. Co., 299 I.C.C. 545, 547 (1956), aff'd, 301 I.C.C. 581, 585 (1957), sustained, United States v. Interstate Commerce Commission, 14 Fed.Car.Cases, ¶ 81,396 (D.D.C.1961), affirmed, 114 U.S. App.D.C. 25, 309 F.2d 645 (1962); C. & G. Radio Supply Co. v. Chicago, R. I. & P. R. Co., 298 I.C.C. 1 (1934); Folberth Auto Specialty Co. v. New York C. R. Co., 147 I.C.C. 555, 557 (1928); DiGiorgio Fruit Co. v. A. E. R. R. Co., 128 I.C.C. 31, 33 (1927).

6. Those buttons charged into the cupola were not processed other than by breaking and this does not materially differ from processing of other scrap metal—albeit other scrap may be usually processed by scrap dealers rather than steel companies. Scrap recovered from slag dumps, moreover, is generally recognized as a special kind of scrap or steel. The Office of Price Stabilization, during a period when the nation was intent on conserving its resources and operations such as plaintiff's were more commonplace, defined and set prices for these buttons as scrap iron.

7. Plaintiff's allegations that the witness for Laclede failed to provide it with certain underlying data at the deposition hearing was not presented to the Commission or to the Court prior to oral argument. Such allegations are, therefore, not properly before the Court. United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 36–88, 73 S.Ct. 67, 97 L.Ed. 54 (1952). The Court notes, however, that the allegation is not supported by the evidence, and, even if properly preserved, would not require a result different from that reached here.

8. Notwithstanding the fact that there is some evidence in the record which might be considered supportive of the contrary conclusion pressed upon this Court by plaintiff, this Court concludes upon review of the whole record before it that the Commission reasonably concluded that "cast iron buttons" are properly classifiable as "scrap iron" and that it should sustain the Commission's challenged interpretation. General Motors Corp. v. United States, 207 F. Supp. 641 at 643–644 (E.D.Mich.1962), affirmed 324 F.2d 604 (6th Cir. 1963); General Motors Corp. v. United States, 299 F.2d 233 (6th Cir.), cert. denied, 371 U.S. 813, 83 S.Ct. 24, 9 L.Ed.2d 55 (1962). Courts should pay great deference to Commission findings since such findings involve not only the exercise of Commission expertise but include questions of judgment governing the interpretation of classification. Emmons Coal Mining Co. v. Norfolk & Western Ry., 272 U.S. 709, 712, 47 S.Ct. 254, 71 L.Ed. 485 (1927); Sonken-Galamba Corp. v. Thompson, 225 F.2d 608, 610 (10th Cir. 1955), cert. den. 350 U.S. 896, 76 S.Ct. 154, 100 L.Ed. 788.

The findings of Division 2, Acting as an Appellate Division, are supported by substantial evidence and its conclusions have a rational basis and are in accord with the applicable law.

9. The injunction prayed for by the plaintiff should be denied and the complaint should be dismissed.

WHEREFORE, it is ordered that an appropriate final judgment in accordance with the foregoing findings of fact and conclusions of law be entered.