E. BROOKE MATLACK, INC.
and
Coastal Tank Lines, Inc.
v.
UNITED STATES of America,
and
Interstate Commerce Commission.
Capitol Transport Company, Inc.,
Intervenor.

Civ. A. No. 28670.

United States District Court
E. D. Pennsylvania.

June 15, 1961.

Shertz, Barnes & Shertz, by Paul F. Barnes, Philadelphia, Pa., for E. Brooke Matlack, Inc. and Coastal Tank Lines, Inc.

Robert W. Ginnane, Gen. Counsel, by Fritz R. Kahn, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., John H. D. Wigger, Dept. of Justice, Washington, D. C., for the United States.

Donald E. Cross, Washington, D. C., Ralph C. Busser, Jr., Philadelphia, Pa. (Watkins & Rea, Washington, D. C., of counsel), for Capitol Transp. Co., Inc.

Before KALODNER, Circuit Judge, and KRAFT and WOOD, District Judges.

WOOD, District Judge.

This is an appeal from the denial by the Interstate Commerce Commission of the petition of E. Brooke Matlack, Inc. and Coastal Tank Lines, Inc. requesting the Commission to issue an order declaring that certain permits owned by Capitol Transport Company, Inc. had been revoked. We are met at the outset with the question of whether E. Brooke Matlack, Inc. and Coastal Tank Lines, Inc. have any standing to prosecute this appeal. The fact that these parties appeared and participated in the proceedings before the Commission is not determinative of their standing to maintain this action. The appeal is brought under the provisions of 28 U.S.C.A. §§ 1336, 1398, 2284 (see 1960 Supp.), and 2321 through 2325. Although these sections do not specify the classes of persons who may sue to set aside an order of the Commission, it is a recognized principle that the judicial power may not ordinarily be invoked by one whose rights are not affected. We think the petitioners here have not shown that their rights will be adversely affected by the Commission's order. See Jersey City v. United States et al., D.C.N.J.1950, 101 F.Supp. 702, Opinion by Circuit Judge Maris. We think that E. Brooke Matlack, Inc. and Coastal Tank Lines, Inc. have no standing to sue. Nevertheless, we do not rest our decision solely on that point, but hold that on the merits the complaint should be dismissed. Jersey City v. United States et al., supra. Under the sections cited above upon which this appeal is based, we are compelled to review the action of the Interstate Commerce Commission upon the record before it. While the facts are not in dispute, a brief résumé of the events leading up to the order of the Interstate Commerce Commission, entered July 25, 1960, in Docket No. MC–35751, Capitol Transport Company, Inc., contract carrier application, seems appropriate.

The controversy turns on a "Petition to Cancel Permit" filed by Capitol Transport Company. Inc. (hereinafter referred to as Capitol), on June 25, 1953.[1]

1. "In the Matter of Capitol Transport Company, Inc., M.F.—I.C.C. 35751

"Petition To Cancel Permit

"To The Interstate Commerce Commission:

"Capitol Transport Company, Inc., herein respectfully represents that on the 22 day of April, 1941, your Commission granted to your petitioner herein, under the above number, rights to haul petroleum products in tank trucks from Baltimore, Maryland to points and places in Pennsylvania, etc., as provided in said certificate.

"That your petitioner herein has for a long period of time been unable to obtain any business or petroleum products to haul by virtue of this certificate and the expense of keeping this certificate in force and alive, which includes insurance costs, is very burdensome to your petitioner.

"Your petitioner believes that it is entitled to relief from the burden of carrying expensive insurance coverage even though it has not been engaged in any type of hauling under said certificate for quite some time.

"Your petitioner therefore prays your Honorable Commission to enter an order cancelling the rights under Certificate No. M.F.—I.C.C. 35751, granted to your petitioner,

"And it will ever pray, etc.

"Capitol Transport Company, Inc.

"By: Joseph L. Coogan, Pres.

"Attest: Robert W. Coogan, Sec'y."

Significantly, the prayer of the Petition was that the Commission "enter an order canceling the rights under Certificate No. MF–I.C.C. 35751 granted to your petitioner." The Commission did in fact, on August 10, 1953, issue an order revoking permit No. MC–35751. It developed, however, that in addition to the rights held under the lead docket number, MC–35751, petitioner also held rights under a Sub-1 docket which varied in some degree from those rights which were given it under the lead docket number. The lead permit authorized "the transportation of petroleum products in bulk over irregular routes from Baltimore, Maryland, to Lewisburg, Pennsylvania," whereas the Sub-1 permit authorized the transportation of "liquid petroleum products in bulk in tank trucks over irregular routes from Curtis Bay, Maryland, to Chambersburg, Gettysburg, Harrisburg, Huntington, Lebanon, Lewistown, and York, Pennsylvania." Having in mind that Capitol had two distinct authorities from the Interstate Commerce Commission, it is quite obvious that its petition to revoke is, to say the least, ambiguous.[2] Regardless of intention, it is a fact that the order itself canceled only the rights under the lead docket No. MC–35751 and made no mention of the Sub-1 docket number.

On August 28, 1957, E. Brooke Matlack, Inc. (hereinafter referred to as Matlack), and Coastal Tank Lines, Inc. (hereinafter referred to as Coastal), learned that on August 10, 1953, although permit No. MC–35751 had been revoked, the authority under the Sub-No. 1 docket was and continued to be in effect. They, Matlack and Coastal, then began a series of legal proceedings aimed and directed toward the ultimate result that the order of August 10, 1953 be reopened and changed so as to provide for the complete cancellation and revocation of not only the rights conferred at the lead docket but those covered by the Sub-No. 1 docket which, in effect, would have canceled all outstanding authority of Capitol. The basis of their original application was that the Commission "intended and did revoke the permits of Capitol Transport Company, Inc. at both the lead docket and at Sub-No. 1 docket" and that "in order to clarify the situation" a new order be issued specifically setting forth that both permits "are revoked and have always been revoked." This petition was denied on February 13, 1958, and was followed by another petition on May 12, 1958, which was likewise dismissed on August 29, 1958. Thereafter, the Commission, presumably by reason of a reconsideration of the procedure involved, vacated its orders of February 13 and August 29, 1958, and granted petitioner a hearing "solely for the purpose of ascertaining the facts as to whether or not applicant, by its request of June 17, 1953, intended, and did request, that the permit in No. MC–35751 (Sub-No. 1) also be revoked."

The Hearing Examiner found that Capitol had intended to request, *but did not request*, the revocation of permit No. MC–35751 (Sub-No. 1) whereupon the plaintiffs excepted to the Hearing Examiner's report and recommended order and Capitol replied. Upon consideration, agreeing with the Hearing Examiner, the Commission found that "by its petition of June 17, 1953, Capitol intended to request but did not actually request revocation of permit No. MC–35751 (Sub-No. 1); that under the circumstances above described revocation of said permit is neither warranted nor proper and that the instant petition should be denied." Throughout these proceedings the Hearing Examiner and the Commission have

---

2. The lead docket was issued April 30, 1943, but the application refers to authority granted April 22. 1941, the date of the granting of the Sub.-No. 1 authority; the application refers to points and "places" in Pennsylvania, whereas the lead docket refers to only one "place" in Pennsylvania. On the other hand, although admittedly petitioner "intended" to revoke both authorities, the petition refers to "certificate" and the "certificate" clearly in the singular. The title and prayer, however, make reference only to the lead docket No. M.F.—I.C.C. 35751.

consistently held that although they could find as a fact that originally Capitol did intend to have canceled or revoked all of its oustanding authority, it did not in fact do so; that the petition as filed in 1953 requested revocation of the lead docket number only; that a perfectly proper order was entered to that effect involving no ministerial or administrative error; that Capitol had since 1957 been operating under the authority covered by the Sub-No. 1 permit; that Capitol was not requesting the revocation or cancellation of its authority; and that there was no legal basis under the provisions of § 212(a) of the Interstate Commerce Act, 49 U.S.C.A. § 312(a)[3] or under any other statute to authorize it to revoke or cancel a duly issued permit on the basis of the petitions of the complainants, competing motor carriers.

 We agree. After a careful examination of this record, we are unable to find as plaintiffs contend that the orders were not bottomed on sufficient facts or further, as he argued before us, that as a matter of law the conclusions of the Commission were incorrect. Obviously the Commission had the power to correct its order, if based on inadvertence or mistake, and it could alter or terminate rights which are extant or which had been revoked or should have been revoked. But we can hardly say here that their failure to do so was error. American Trucking Associations, Inc. et al. v. Frisco Transportation Co., 1958, 358 U.S. 133, 145, 79 S.Ct. 170, 3 L.Ed.2d 172; Smith Brothers Revocation of Certificate, 33 M.C.C. 465, 472 (Comm.1942); and Gagnon v. United States, 193 U.S. 451, 24 S.Ct. 510, 48 L.Ed. 745. Assuming a legal request had been made for revocation of both permits, the Commission quite properly found in its report of July 25, 1960 that it had been withdrawn.[4]

3. § 312. Suspension, change, revocation and transfer of certificates, permits, and licenses.

"(a) Certificates, permits, and licenses shall be effective from the date specified therein, and shall remain in effect until suspended or terminated as herein provided. Any such certificate, permit, or license may, upon application of the holder thereof, in the discretion of the Commission, be amended or revoked, in whole or in part, or may upon complaint, or on the Commission's own initiative, after notice and hearing, be suspended, changed, or revoked, in whole or in part, for willful failure to comply with any provision of this chapter, or with any lawful order, rule, or regulation of the Commission promulgated thereunder, or with any term, condition, or limitation of such certificate, permit, or license: *Provided, however,* That no such certificate, permit, or license shall be revoked (except upon application of the holder) unless the holder thereof willfully fails to comply, within a reasonable time, not less than thirty days, to be fixed by the Commission, with a lawful order of the Commission, made as provided in section 304(c) of this title, commanding obedience to the provision of this chapter, or to the rule or regulation of the Commission thereunder, or to the term, condition, or limitation of such certificate, permit, or license, found by the Commission to have been violated by such holder: *And provided further,* That the right to engage in transportation in interstate or foreign commerce by virtue of any certificate, permit, license, or any application filed pursuant to the provisions of sections 306, 309, or 311 of this title, or by virtue of the second proviso of section 306(a) of this title or temporary authority under section 310a of this title, may be suspended by the Commission, upon reasonable notice of not less than fifteen days to the carrier or broker, but without hearing or other proceedings, for failure to comply, and until compliance, with the provisions of sections 311(c), 317(a), or 318(a) of this title or with any lawful order, rule, or regulation of the Commission promulgated thereunder.

4. "Capitol by its opposition herein has in effect withdrawn the request for revocation. It has consistently been held that in the absence of an involuntary revocation proceeding under Section 212(a), the Commission cannot without the consent of the holder narrow or restrict a permit. Motor Ways Tariff Bureau v. Steel Transp. Co., 62 M.C.C. 413. In our opinion this Commission now lacks authority to revoke Capitol's Sub-No. 1 authority pursuant to Capitol's 1953 request; and that the instant petitions should be denied." ("Report of the Commission on Petition", page 5, decided July 25, 1960.)

We find, therefore, no ministerial error or inadvertence on the part of the Commission, although concededly there was by petitioner Capitol in 1953. Furthermore, had the Commission committed such error, it could correct itself but legally and justifiably declined so to do.

■■ We turn then to the question of judicial error in the interpretation and application of section 212(a), supra. The revocation of operating authority previously issued to a motor carrier is the exclusive province of the Interstate Commerce Commission. Castle v. Hayes Freight Lines, Inc., 348 U.S. 61, 75 S.Ct. 191, 99 L.Ed. 68. The general rule is that " 'the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' " Rochester Telephone Corporation v. United States, 1939, 307 U.S. 125, 146, 59 S.Ct. 754, 765, 83 L.Ed. 1147; Mississippi Valley Barge Line Company v. United States, 1934, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260; and Waite v. United States, D.C.W.D.Pa.1958, 161 F.Supp. 856, 860.

Our function as a reviewing Court is restricted. "It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821.

The order of the Interstate Commerce Commission of July 25, 1960 in these proceedings is sustained and the complaint is dismissed.