Floyd **WILLEY**, Plaintiff,

v.

The **UNITED STATES** of America

and

The Interstate Commerce Commission,
Defendants,

and

Jack Gray Transport, Inc., Intervening
Defendant.

Civ. No. 64–90–D.

United States District Court
E. D. Illinois.

Sept. 17, 1965.

Clyde Meachum, of Foreman, Meachum & Clapper, Danville, Ill., for plaintiff.

Clarence William Vandegrift, I.C.C., John H. D. Wigger, Dept. of Justice, Washington, D. C., for defendants United States and I.C.C.

Thomas C. Stifler, of Stifler & Synder, Danville, Ill., Carl L. Steiner, of Axelrod, Goodman & Steiner, Chicago, Ill., for intervening defendant Jack Gray Transport, Inc.

Before KILEY, Circuit Judge, and PLATT and JUERGENS, District Judges.

JUERGENS, District Judge.

This action is to review an order of the Interstate Commerce Commission, dismissing a complaint filed by Floyd Willey requesting revocation of certain operating authority held by Machinery & Materials Corporation.

The facts as disclosed by the pleadings and accompanying documents are as follows:

In 1941 interstate authority was granted to one John B. Slaughter, which authorized the transportation over irregular routes of sand and gravel from Covington, Indiana and points within three miles of Covington, Indiana to points in Vermilion County, Illinois. This authority was transferred to Russell D. Enos in 1952 and transferred to plaintiff Floyd Willey in 1954. In 1956, pursuant to application by Floyd Willey, a new certificate was granted authorizing the transportation of commodities as follows:

Sand and Gravel,

From points in Warren, Fountain and Vermillion Counties, Ind., to points in Vermilion County, Ill., with no transportation for compensation on return except as otherwise authorized.

Haydite, limestone, crushed rock, and coal,

From points in Vermilion County, Illinois, to points in Indiana, with no transportation for compensation on return except as otherwise authorized.

Prior to purchasing the sand and gravel authority, plaintiff inquired of the Interstate Commerce Commission District Supervisor concerning any outstanding motor carrier authority duplicating the authority which he proposed to purchase. He was advised that no other person or company held such authority. Again in 1956 when application for extension of the authority was made, a similar inquiry was made of the District Supervisor as to the existence of any competitors in the area so that notice could be given. He was again advised that there was no outstanding authority duplicating the existing authority or the extended authority requested in the application.

Plaintiff has been rendering continuous service to the public under the authority granted and owns and operates tractors, dump trailers and a tandem dump truck in rendering such service and has a terminal and principal place of business in Danville, Illinois. His equipment

and facilities represent an investment of approximately $150,000.00.

In 1946 Peter Jansma, d/b/a Jansma Cartage Company, filed an application pursuant to which a certificate of public convenience and necessity was issued to Peter Jansma, d/b/a Jansma Cartage Company, authorizing transportation of commodities as follows:

"Commodities, which because of size or weight require the use of special equipment, and contractors' materials, supplies, and equipment moving in connection therewith which do not necessarily require the use of special equipment, and such commodities as are usually transported in dump trucks, over irregular routes, between points in Indiana and Illinois."

It is alleged and not disputed that during the proceedings which resulted in the grant to Jansma notice of the filing of the application was given to various competitors in Hammond, Munster, Chesterton and Gray, Indiana—all of which are within a radius of 20 miles from Gary, Indiana; the nearest of which is in excess of 100 miles from Danville, Illinois.

The proceedings do not show that notice was ever given to plaintiff's predecessor in title, John B. Slaughter of Danville, Illinois, or to any competitor other than those listed. There were no protestants at the hearing which resulted in granting the authority to Jansma. There was no evidence presented with respect to a public need for dump truck authority other than within a 50 mile radius from point of pickup. There was no evidence submitted with respect to a public need for dump truck authority in the Danville, Illinois—Cayuga, Indiana territory.

During the course of the prosecution of the Jansma application the following occurred:

"Exam. Cosby: About the territory in this dump truck movement; will that be confined in northern Indiana from the points you have referred to here, that is South Chicago and Thornton, Illinois?

"The Witness: That is just about the needs for the dump truck, yes.

"Exam. Cosby: If the authority were from Thornton, Illinois and South Chicago to a reasonable distance in Indiana, would that suffice?

"The Witness: Well at the present time, yes sir.

"Exam. Cosby: You will not take this dump truck material to points in southern Indiana will you?

"The Witness: Never had the occasion to.

"Exam. Cosby: How far would you haul it?

"The Witness: Not over fifty miles across the line from point of pick-up."

The supporting witnesses testifying in the Jansma application were three contractors interested primarily in the heavy hauling portion of the application, but there was no real evidence submitted with respect to the public need for dump truck authority and there was *no* evidence presented supporting the dump truck authority in the territory served by plaintiff or his predecessors in title.

The operating rights granted Jansma were transferred to a corporation and a new certificate issued in the name of the corporation. Subsequently, the certificate was transferred by the corporation to Machinery & Materials Corporation pursuant to order of the Transfer Board on March 11, 1960. The plaintiff, upon receiving notice through the Federal Register that the transfer had been approved, filed a petition for reconsideration of the order in which he raised, among other things, the issue of dormancy. The petition was denied by the Commission finding that it raised issues not pertinent to the transfer, since the transfer did not involve any real change in ownership as the shareholders, officers and directors of the two corporations were identical. On February 23, 1962 Builders Trucking, Inc., and Machinery & Materials Corporation filed an application requesting that

Builders Trucking, Inc., be permitted to purchase the dump truck portion of the certificate held by Machinery & Materials Corporation. Plaintiff and others appeared, protesting the proposed purchase. The evidence in this transfer proceeding was undisputed that the dump truck authority for which transfer was sought had been completely dormant from the time it was issued in 1947 until 1961 and that there were no dump truck movements under the certificate in the territory served by plaintiff. The examiner, conducting the hearing on this latter transfer request, submitted a report and recommended order on October 23, 1962, wherein he made the following findings and conclusions:

"(a) Prior to the commencement of negotiations for the sale of the dump truck portion of said certificate, Machinery & Materials Corporation was not providing a dump truck service and said operating rights were dormant.

"(b) The transfer of dormant rights may be approved as consistent with the public interest only upon a showing that there is a need for the service which may be reestablished thereunder.

"(c) In determining whether the transfer would be consistent with the public interest much weight must be given to the traffic needs in the territory and the possible adverse effect which a resumption of service would have on existing carriers.

"(d) That the vendee was not fit financially, or otherwise, in that it did not appear from the record that the Commission could rely on Jack Gray (the dominant officer of vendee) to comply with the requirements of the Act and the Commissions rules and regulations."

Exceptions were filed and, pending a decision by the Commission, the transfer application was dismissed pursuant to motion of the applicants; on May 29, 1963 the heavy hauling portion of the certificate owned by Machinery & Materials Corporation was transferred to another corporation, leaving Machinery & Materials Corporation with the dump truck authority.

On August 12, 1963 Floyd Willey filed before the Interstate Commerce Commission a complaint seeking revocation of certificate in part, wherein he sought to have the Commission revoke that part of the defendant's certificate of public convenience and necessity which duplicates plaintiff's certificate of public convenience and necessity pursuant to the provisions of Section 212(a) of the Interstate Commerce Act and specifically that part which authorized the transportation of such commodities as are usually transported in dump trucks between points in Indiana and Illinois. The proceedings before the Commission were by modified procedure—the facts being submitted to the Commission in affidavit form in lieu of oral hearing. The matter was considered by Joint Board No. 21. The Board entered its report and recommended order wherein it recommended that the complaint be dismissed. The plaintiff filed exceptions to the report and recommended order; and, upon review by Division 1 of the Interstate Commerce Commission, the recommended order of Joint Board No. 21 was affirmed and plaintiff's complaint was dismissed. The Commission's order being then administratively final, the plaintiff filed this complaint.

The plaintiff now petitions this Court to set aside an order of the Interstate Commerce Commission served on July 10, 1964, which dismissed plaintiff's complaint in a proceeding entitled "Floyd Willey vs. Machinery & Materials Corporation, Docket No. MC–C–4188."

Plaintiff urges that the Interstate Commerce Commission acted arbitrarily and contrary to law and misconstrued the law and its authority with respect to its power and its duty to revoke in part a certificate of public convenience and necessity which was improperly issued by the Commission. Plaintiff contends that the certificate should be revoked with re-

spect to the territory and commodities included in the certificate of public convenience and necessity held by plaintiff for the reasons that (1) no notice of the filing of the application for the certificate was given to plaintiff's predecessor in title who was the owner of record at the time of the issuance of the subsequent authority; (2) the record of the proceedings, pursuant to which the certificate was issued, discloses that no public need was shown for the issuance of the duplicating authority; and (3) the dump truck portion of the certificate was dormant for more than 15 years from the date of its issuance, contrary to one of the provisions of the certificate.

Pursuant to stipulation between the parties, Jack Gray Transport, Inc., was permitted to intervene as a defendant in the proceedings before this Court.

■ An order of an independent body such as the Interstate Commerce Commission is not to be disturbed by the court if the order is within the scope of the statute which the Commission is authorized to administer and enforce and is based upon adequate findings which are supported by substantial evidence in the record. This is so even though the court should disagree with the Commission's conclusion, since the Act confides broad discretion in the Commission. The duty of the court is to determine whether the order under consideration comes within the prescribed legal limits. American Trucking Associations, Inc. v. United States, 170 F.Supp. 38 (U.S.D.C. D.Columbia, 1959).

■ The function of this Court is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, a reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination,

if that has support in the record and the applicable law. The general rule is that the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. E. Brooke Matlack, Inc. v. United States, 195 F.Supp. 399 (U.S.D.C.E.D.Pa., 1961).

■ The Commission has power to correct orders, if based on inadvertence or mistake, and it could alter or terminate rights which are extant or which had been revoked or should have been revoked. American Trucking Associations, Inc., et al. v. Frisco Transportation Co., 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958).

■■ During the course of the hearing it was argued that since the plaintiff had not obtained and presented a certified copy of the record before the administrative body, there was no evidence which this Court might consider, since only a certified copy of the record before the Commission is admissible in evidence.

The complaint in this matter, which incorporates copies of the various proceedings here brought in question, was verified; and it has not been contended that the various documents presented for consideration by the Court were other than true and correct. Accordingly, the Court will, for the purpose of determining this matter, consider the various documents and pleadings as evidence which should properly be considered by the Court in reaching its determination. Although the rules provide a method whereby public documents or official records or entries therefrom may be admitted into evidence, these same rules specifically do not prevent the proof of official records or entries or lack of entries therein by any other method authorized by statute or rules of evidence at common law.

■ Since the proceeding before the Interstate Commerce Commission was by modified procedure, the only evidence presented to it for consideration is also before the Court in the form of pleadings and statements by the parties.

Section 205(e) of the Interstate Commerce Act, 49 U.S.C. § 305(e), contains the following provisions with regard to notice to interested parties:

"(e) In accordance with rules prescribed by the Commission, reasonable notice shall be afforded, in connection with any proceeding under this chapter, to interested parties and to the board of any State, or to the governor if there be no board, in which the motor carrier operations involved in the proceeding are or are proposed to be conducted, and opportunity for intervention in any such proceeding for the purpose of making representations to the Commission or for participating in a hearing, if a hearing is held, shall be afforded to all interested parties."

In Pinkett v. United States, 105 F. Supp. 67 (U.S.D.C.D.Md., 1952), the Court enjoined the Commission from issuing a certificate where the Commission failed to grant a rehearing requested by parties who did not receive notice of the application. The application was filed as prescribed by Commission rule promulgated pursuant to Sections 205(e) and 206(b) of the Interstate Commerce Act (49 U.S.C.A. §§ 305(e) and 306(b)). These sections provide in substance that reasonable notice shall be afforded to interested parties in accordance with rules prescribed by the Commission. In discussing the propriety of the Commission's rules concerning giving of notice, the Court had the following to say:

"* * * It is, however, not our function to prescribe the rule which the Commission should pass and we confine ourselves to the holding that the duty to see that proper service is made was not adequately performed in the instant case with the result that parties that might be affected by the issuance of the proposed certificate had no notice of the application and that therefore the issuance of the certificate must be restrained."

In Murphy Motor Freight Lines v. United States, 148 F.Supp. 471 (U.S.D.C. D.Minn., 3rd Div., 1957), the Court found that the applicant for certificate failed to make any diligent inquiries in order to determine the name of every motor carrier with whose service the operation described in the application would be competitive and found that the Commission should have waived its rule limiting the time for reopening proceedings. The Court said:

"* * * (T)he failure to give notice to the plaintiffs deprived the Commission of an opportunity to be advised of all the relevant facts, and it would seem that that circumstance is a persuasive factor in determining the necessity for a rehearing. The very evident purpose of the statute requiring notice is to enable the Commission to be informed as to the public need and necessity of the commodity route applied for by an applicant, and, without reasonable notice to interested parties, that phase of the inquiry may remain unexplored at the hearing. * * *"

The Court concluded that under the exceptional facts and circumstances of the case the Commission abused its discretion and acted arbitrarily in denying plaintiffs' application to waive the rule and remanded the proceedings for future hearing in which all interested parties might be afforded an opportunity to be heard.

In Murphy, supra, the delay in filing the application was only slightly in excess of thirteen months; here the delay was much longer. It is true that a portion of the original Jansma authority was utilized; however, that portion pertaining to the dump truck provisions was dormant until 1961. It has been clearly established that plaintiff had no knowledge of the existence of the competing authority until 1961 when the conflicting authority was transferred and the transfer appeared in the Federal Register. He immediately sought to have the transferred certificate nullified without success. He then filed a petition requesting the Commission to revoke the conflicting authority. The Commission again re-

fused on the ground that it had no power to revoke the certificate.

It has been contended that plaintiff's action is barred by the doctrine of laches. This contention merits little discussion. While it is true that the attempt to set aside the duplicating certificate came after a lapse of about 15 years, it is also clear that plaintiff had no notice of the existence of the certificate at the time of its original issuance due to failure of the applicant to notify plaintiff's predecessor in title, and it is also clear that the conflicting authority was hidden for the entire time because of the dormancy. In fact, as soon as complainant learned that the duplicate authority did exist, he immediately sought relief. Laches is not merely a question of time; it is a question of diligence. The facts here indicate no lack of diligence on the part of the plaintiff.

Plaintiff's contention that the duplicating certificate should be cancelled because it lay dormant from the time of its issuance until 1961 is not well founded. The competing certificate did contain the provision that "the holder thereof shall render reasonably continuous and adequate service to the public." However, such provision in the certificate is not adequate to work a forfeiture without further action by the Commission. Smith Brothers Revocation of Certificate, 33 M.C.C. 465.

In its report and order the Commission found that the issue of dormancy raised by the complainant was at the time of the hearing not in issue, since the evidence before the Commission showed that defendant's operations at the time of the hearing included operations under the dump truck provision in complainant's area of service. The Court finds no fault with the Commission's ruling in this respect.

The Commission further stated, however, that for there to be inadvertence justifying a modification of a certificate, there must be something less than a change in substance in the prior underlying findings and that there was no argument that the original grant of authority to defendant's predecessor was not phrased in accordance with the findings of the proceedings and found that granting the requested relief would be tantamount to changing the decision by which the competing certificate was granted.

While Section 212(a) of the Interstate Commerce Act (49 U.S.C.A. § 312(a)) purports to make the issuance of a certificate the final step in the administrative process for obtaining authority to transport commodities in interstate commerce, the courts have found that the Commission has the power to revoke wholly or partially certificates which were issued as a result of inadvertence or mistake. The leading case in this area is American Trucking Associations, Inc., et al. v. Frisco Transportation Co., 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172. In Frisco the authority granted by the Commission originally contained certain limitations; however, when the certificate finally issued, the limitations were omitted. The Commission found that the omissions resulted from "an inadvertent clerical error" and could thus be corrected. The United States Supreme Court agreed.

One of the questions the Supreme Court was called upon to decide in Frisco was whether the omission of certain restrictions from the certificates was due to a conscious policy choice on the part of the Commission or, as found by it, to error in the administrative process of fashioning the certificates. The holding in Frisco is premised on the theory that a tribunal has an inherent power to correct mistakes resulting from oversight or inadvertence. The Court found that the Commission does have such powers. It pointed out, however, that this power extends only to judgments which have issued due to inadvertence or mistake and "may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful in the light of changing policies."

The question then presented here is whether or not an inadvertent error was made by the Commission when it originally issued the contested certificate or whether the Commission in granting the certificate intended it to be all inclusive between points in Illinois and Indiana, both with respect to the heavy equipment hauling portion of the certificate and the dump truck portion.

 The Commission has power to grant certificates; however, this power is not unlimited and certificates may be granted only within circumscribed bounds—one of the requirements for issuing a certificate is that notice of its proposed issuance be given to competitors; another requirement is that the Commission first determine there is a public need for the issuance of the certificate. These two factors work hand and glove, one with the other. By giving notice to competitors the Commission is provided with knowledge of the existence of existing certificates in the requested area and the need for additional services in that area. This information received by the Commission is then, as it should properly be, sifted and weighed to determine the wisdom of the grant; and if it finds, after considering all of the evidence presented to it, that a certificate should issue, it may then issue the certificate, or if it finds that the certificate is not in the public interest, it may refuse its issuance.

During the course of the proceedings which resulted in the grant of the contested certificate, no evidence was presented to the Commission as regards the dump truck movements along the entire borders of the States of Illinois and Indiana. Only a modicum of evidence bearing on the dump truck movements was presented, and this concerned a very limited area surrounding South Chicago and Thornton, Illinois. The following query by the examiner indicates that the dump truck movement was intended only to apply in and around northern Indiana; that query is as follows:

"About the territory in this dump truck movement; will that be confined in northern Indiana from the points you have referred to here, that is South Chicago and Thornton, Illinois?"

Further interrogation by the examiner revealed that the dump truck materials would not be taken to points in southern Indiana and would not be over 50 miles across the line from the point of pickup.

When the certificate issued, however, the dump truck authority was not restricted to the area defined and discussed in the hearings.

 It is not reasonable to assume that the Commerce Commission intended to grant dump truck authority for the entire areas between the States of Illinois and Indiana and to 50 miles from point of pickup on either side of that line when the only evidence presented to the Commission concerned the need for these movements in the northern Indiana-Illinois area only. It is reasonable to assume, and the Court finds, that the unrestricted certificate issued as the result of inadvertence or mistake. It cannot be said that to modify the certificate to comply with the proofs submitted to the Commission would be a change in policy.

This case should be considered as one in which the Commission does have the power to revoke or modify a certificate. Whether it should be revoked or modified is a question for the Commission to decide.

This case should be remanded to the Commission for further consideration in the light of the determination here made that it has the power to modify or revoke the contested certificate on the facts of this case.

The above shall be considered as findings of facts and conclusions of law.

KILEY, Circuit Judge, and PLATT, District Judge,* concur.

---

* PLATT, District Judge, concurred in the above opinion prior to his death.