MERCURY MOTOR EXPRESS, INC.,
Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants.

No. 71–329–Civ. T.

United States District Court,
M. D. Florida,
Tampa Division.

May 15, 1972.

Gregory A. Presnell, of Akerman, Senterfitt, Eidson & Wharton, Orlando, Fla., for plaintiff.

Raymond M. Zimmet, Interstate Commerce Commission, Washington, D. C., John L. Briggs, U. S. Atty., Jacksonville, Fla., for defendants.

John M. Musselman, Rhoades, Sinon & Reader, Harrisburg, Pa. (Attorney for Intervenor, P. L. Lawton, Inc.).

Before RONEY, Circuit Judge, KRENTZMAN and HODGES, District Judges.

## OPINION AND JUDGMENT

HODGES, District Judge.

The plaintiff (Mercury Motor) seeks reversal of certain orders entered by the Interstate Commerce Commission in its Docket No. MC–128762 (Sub. No. 2).[1] The Commission rejected Mercury's petition to re-open that proceeding and modify an earlier order granting certain authority to the intervenor, P. L. Lawton, Inc., as a contract motor carrier. We reverse and remand for a hearing and further consideration by the I.C.C.

Mercury Motor is a common carrier authorized by the Commission to transport general commodities by truck between points in various states including Pennsylvania and Florida. One of its customers in prior years has been the Wise Potato Chip Company which maintains a manufacturing or processing facility in Berwick, Pennsylvania, and another similar plant on the outskirts of St. Augustine, Florida. As a common carrier, Mercury has regularly trans-

1. Jurisdiction of this Court was invoked pursuant to 28 U.S.C.A. §§ 1336 and 2321, et seq., and a three-judge panel was convened in accordance with 28 U.S.C.A. § 2284.

ported foodstuffs and other materials for Wise between these two locations.

On June 21, 1967, P. L. Lawton, Inc., of Berwick, Pennsylvania, filed an application with the I.C.C. seeking a permit to operate as a contract motor carrier between Berwick and various other locations including all points in Florida. The application was supported by Wise Potato Chip Company, and the requested certificate would have permitted Lawton to transport shipments for Wise that had previously been conveyed, at least in part, by Mercury. In accordance with I.C.C. procedures, therefore, Mercury protested the Lawton application.[2]

A hearing was held before an I.C.C. Examiner on October 9, 1967. The following colloquy occurred immediately after the hearing had been opened:

"Exam. Nicholson: Any other appearances?

There being no response, if you are ready, Mr. Musselman, you may proceed, sir.

Mr. Musselman [Counsel for Lawton]: If the Examiner please at this time I offer the following limited amendment of the application so that the application would read: 'Authority sought to engage in operation, in interstate or foreign commerce'  . . .

Exam. Nicholson: Does everyone have a copy of that:

Mr. Musselman: Yes.

Exam. Nicholson: Do Protestants have a copy of the proposed amendment? I don't think then it is necessary to read it.

Mr. Musselman: All right, sir.

The intention of the amendment is to make *certain limitation* in the authority sought: *First, to except St. Augustine from the State of Florida*; to limit the foodstuff ingredients to those except in bulk; and rejected prepared foodstuffs, not frozen and not in bulk, from the above destinations to Berwick, in the same manner as the outgoing prepared foodstuffs are limited to not frozen and not in bulk. (Emphasis supplied)

Those are the intentions of the amendment.

Exam. Nicholson: I think probably it might be well if we just take that amendment as an exhibit.

Mr. Musselman: All right, sir."

\* \* \* \* \* \*

"Exam. Nicholson: Any objection to the amendment?

Mr. Stroud [Counsel for Mercury Motor]: No, sir.

Mr. Davis: None.

Exam. Nicholson: There being no objection, the amendment appears to be restrictive in nature, it is allowed.

Mr. Stroud: Mr. Examiner, since the amendment has been made and has been allowed by the Examiner, Mercury Motor Express, Inc. would like to withdraw its protest to the instant application and would like to remain a party of record to receive copies of any orders, and would like to be physically excused from the hearing room, sir.

Exam. Nicholson: All right, sir. The record will so show. You are excused, Mr. Stroud.

---

2. Mercury alleges that in 1965 it handled 43 shipments for Wise from Berwick to the Florida plant, earning a revenue of $15,769.95; that in 1966 it handled 81 shipments which produced revenue of $25,239.18; and that in 1967 it handled 116 loads for which it earned $47,651.85. Its formal protest before the I.C.C., however, was framed in broader geographic terms:

"Protestant (Mercury) holds itself out to provide the service embraced in the instant application insofar as concerns movements between all points in Pennsylvania on the one hand and on the other all points in the States of Florida, Georgia, and South Carolina  .  . Should the applicant amend its application by deleting the States of Florida, Georgia and South Carolina, the interest of Mercury would be satisfied and its protest would be withdrawn."

Mr. Stroud: Thank you very much, sir."

Thus, the permit ultimately issued to Lawton by the I.C.C. specifically excluded the right to serve St. Augustine, Florida; and during 1968, 1969 and the early part of 1970, Mercury apparently continued as usual to handle Wise's shipments from Berwick to the Florida location. However, in late September, 1970, Mercury discovered that Lawton had begun transporting this traffic. Upon investigation, Mercury learned that the Wise facility in Florida was actually located just outside the city limits of St. Augustine in St. Johns County. As a result, the Lawton certificate did not in fact exclude the right to serve that location.[3]

Mercury thereupon petitioned the I.C.C. to re-open the record and modify Lawton's permit to exclude its right to serve the Wise facility in Florida. The Commission denied the petition on January 29, 1971, without a hearing, and we are called upon to review that decision.

During the original I.C.C. hearing on Lawton's application, one of the principal witnesses was the Traffic Manager of Wise Potato Chip Co. His prepared statement was offered in support of the Lawton application, and in such statement he described the location of his company's facilities as follows:

"The main plant of Wise Potato Chip Co. is located upon approximately 18 acres at Berwick, Pennsylvania, with offices at 228 Rasely Street, Berwick. An additional production plant is located *at St. Augustine, Florida* . . . ." (Emphasis supplied).

Mercury contends that it understood the Wise plant to be located *at* St. Augustine as represented by the shipper; that it relied upon such representation and withdrew its protest (as encouraged by the Commission rules, 49 C.F.R. §

1100.247(d) (5)) only when the Lawton application was amended to exclude St. Augustine; and that if in fact the Lawton certificate *includes* the right to serve the Wise facility in Florida, then the same was issued by the Commission through inadvertence and mistake since the record before it was not susceptible of any construction other than an intent by the parties as well as the Hearing Examiner to exclude that plant.

■ In its order denying Mercury's petition to re-open the record, the Commission recited four grounds as justification for its refusal: (a) that Lawton's permit is clear and unambiguous on its face; (b) that Mercury withdrew from the original proceeding thereby waiving any right to complain; (c) that the original record does not reflect the reason Mercury withdrew or, specifically, that it did so on the basis of the supporting shipper's plant site location; and (d) that since two and a half years had elapsed, the petition to re-open was untimely. It is our view, however, that grounds (a) and (b) merely beg the question, and that (c) and (d) constitute findings that should have been made, if at all, only after an evidentiary hearing had been held. Stated differently, it is our view that under the particular if not peculiar circumstances revealed by the original record, Mercury's petition to re-open was sufficient to state a prima facie claim and gave rise to a plethora of factual issues that necessarily required a determination before any judicious decision could be made to re-open or not re-open the original proceeding. Why was the restrictive amendment offered by Lawton? Had it been requested by Mercury? In either case, what was the intent of the parties and the Commission in excluding St. Augustine? Did Mercury sleep on its rights with knowledge that Lawton was serving the Wise facility in Florida

---

3. The parties apparently agree that reference to an incorporated city or town in an I.C.C. certificate includes only the specific geographic limits of the municipality as described in its charter, and does not include, for example, its postal area. Whether Lawton implemented its authority by transporting any shipments to Florida prior to September, 1970, is not disclosed by the record before us.

prior to September, 1970? These are but a few of the questions that must be resolved.

We are not unmindful of the many authorities that a petition for re-opening or re-hearing is addressed to the sound discretion of the Commission and only a showing of the clearest abuse of discretion is sufficient to overturn their denial. United States v. I. C. C. (Northern Lines Merger Cases), 396 U.S. 491, 521, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Braswell Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98, 102 (W.D.Tex.1967), aff'd per curiam, 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779 (1969); Watkins Motor Lines, Inc. v. United States, 243 F.Supp. 436, 443 (D.Neb.1965); Colorado-Arizona-California Express, Inc. v. United States, 224 F.Supp. 894, 901 (D. Colo.1963). We also appreciate the Commission's concern that there must be a point of finality in each of its proceedings lest it becomes inundated with repeated petitions to re-open and modify existing grants of authority. See Smith & Solomon Trucking Company v. United States, 255 F.Supp. 243 (D.N.J.1966), and Frozen Food Express, Inc. v. United States, 328 F.Supp. 666 (N.D.Tex.1971). Each of those decisions, however, is clearly distinguishable from the case at bar. In *Smith & Solomon Trucking Company*, the complaining carrier had failed to file a timely protest in the original proceeding although notice thereof had been duly published in the Federal Register according to Commission rules. In *Frozen Food Express, Inc.*, the complaining carrier filed a timely protest which was then withdrawn after an accommodating amendment was offered by the applicant but *before the Commission had accepted the amendment.* Here, of course, Mercury withdrew only after the Hearing Examiner had accepted the restrictive amendment offered by Lawton at the hearing. On the other hand, it has been clearly established that the Commission has full authority to re-open its proceedings and correct any of its orders shown to have been issued through inadvertence or mistake. American Trucking Associations, Inc. v. Frisco Transportation Co., 358 U.S. 133, 79 S.Ct. 170, 3 L. Ed.2d 172 (1958); Willey v. United States, 245 F.Supp. 669 (E.D.Ill.1965).

We thus reverse and remand to the Commission for the purpose of conducting an evidentiary hearing upon the factual issues raised by Mercury's petition to re-open. Nothing we have said, however, should be construed as an intimation that such petition should necessarily be granted or, if it is granted, that the original permit or authority granted to Lawton should be modified. We merely hold under the peculiar circumstances of this case that due process and fairness requires further consideration of Mercury's petition to reopen and that such petition raises factual issues that the Commission should determine.

It is so ordered.