**STRICKLAND TRANSPORTATION CO., Inc., Plaintiff,**

**v.**

**The UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

**Civ. A. No. 3–1932.**

United States District Court
N. D. Texas,
Dallas Division.

Aug. 7, 1967.

Concurring Opinion Aug. 24, 1967.

Judgment Affirmed Jan. 15, 1968.
See 88 S.Ct. 694.

Ewell H. Muse, Jr., Austin, Tex., Ralph W. Currie, Dallas, Tex., for plaintiff.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Department of Justice, Washington, D. C.; Melvin M. Diggs, U. S. Atty., Fort Worth, Tex., for defendant United States.

Robert W. Ginnane, Gen. Counsel, Nahum Litt, Atty., I. C. C., Washington, D. C., for defendant Interstate Commerce Commission.

James, Robinson, Felts & Starnes, by Phillip Robinson, Austin, Tex., Phinney, Hallman, Pulley & Livingston, by Leroy Hallman, Dallas, Tex., Walter Caven, Gen. Counsel, and Charles L. Ford, Gen. Atty., Texas R. Ass'n, Austin, Tex., for intervening defendants.

Before GOLDBERG, Circuit Judge, and HUGHES and TAYLOR, District Judges.

## OPINION

GOLDBERG, Circuit Judge:

This case was brought by Strickland Transportation Company against the United States of America and the Interstate Commerce Commission to "revise, enjoin, set aside, annul and suspend in whole or in part, a decision and order" of the Commission, which Strickland alleges "revokes and diminishes in part the authority previously granted" by the Commission to Strickland.

Central Freight Lines, Inc., Herrin Transportation Company, Roadway Express, Inc., Missouri-Pacific Railroad Company, and Southern Pacific Company intervened, seeking to uphold the decision of the Commission.

In order to understand the issue in this case, it is necessary to review the various proceedings leading up to the order of the Commission involved herein.

In 1954, Strickland made application for a certificate of public convenience and necessity to transport general commodities between Houston, Texas, and New Orleans, Louisiana, over certain specified routes, serving all intermediate points. (Docket No. MC–59680 [Sub.

No. 117]). After extended proceedings, the Commission on October 14, 1958, handed down its decision, finding in part

"that the present and future public convenience and necessity require operation by applicant (Strickland) * * * between Houston, Tex., and New Orleans, La., from Houston * * * to Kinder, La., * * * to Baton Rouge, La., * * * to New Orleans, and return over the same route, *serving all intermediate points*, but with service at Baton Rouge restricted to traffic moving to or from points west of the Louisiana-Texas State line." (Emphasis added).

Pursuant to this order, Strickland was granted a certificate authorizing such unrestricted service at all intermediate points in Texas.

Action to set aside this certificate was instituted by several of the protesting carriers, including intervenors, in the United States District Court for the Southern District of Texas at Houston. On August 1, 1960, in T. S. C. Motor Freight Lines, Inc., et al. v. United States, et al., 186 F.Supp. 777, the statutory three-judge court affirmed the Commission's order in part but, as significant here, found that "there was no showing of inadequate service from Orange and Beaumont, on the one hand, and Houston on the other," Id. at 793, and set aside that part of the certificate authorizing new service between Beaumont-Orange and Houston, and points intermediate thereto. Footnote 42 at this point indicated with some specificity in which particulars, the service authorized by the Commission's certificate should be prohibited:

"As the case has to be remanded to the Commission with respect to this phase, we do not undertake to set this forth in terms having the precision of a certificate. But under our holding, except for Strickland's existing authority, the applicants will not be permitted to engage in the following transportation:

(1) service from or through Houston destined to Beaumont or any point between Houston and Beaumont, or in the reverse direction,

(2) service from or through Houston destined to Orange or any point between Houston and Orange, or in the reverse direction,

(3) service from points east of Orange-Beaumont destined to any *intermediate point between* Orange-Beaumont and Houston, or in the reverse direction. (This would not restrict, for example, a shipment from Baton Rouge to Orange or Beaumont, or the reverse.)" 186 F.Supp. at 794.

The Supreme Court affirmed *per curiam* in Herrin Transportation Co., et al. v. United States, et al., 1961, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387.

By its order dated March 15, 1961, the Commission concluded "that the findings in the prior report herein should be modified to conform to the decree of the court." 84 M.C.C. 562, 563. Accordingly, the certificate previously issued to Strickland was modified so as to authorize Strickland to transport the commodities indicated, between the termini and over the routes specified in its present certificate, with service at intermediate points in Louisiana as specified, but with no service at intermediate points in Texas except as follows:

"Serving the intermediate points of Orange and Beaumont, Tex., restricted to traffic moving to or from points east of the Texas-Louisiana State line." Ibid.

On June 1, 1964, in Cause No. MC–C–4472, the intervening defendants and the Commission filed a joint complaint, embracing a petition to reopen and alternatively to reform the Sub. 117 Certificate, alleging that Strickland was engaged in providing an unlawful transportation service to and from Beaumont and Orange, Texas, and points in the commercial zones and terminal areas thereof on shipments to or through Houston, without moving such shipments physically across the Texas-Louisiana

State line. An example of the traffic which Strickland admittedly transports under the restriction and which is at issue, would be a movement from St. Louis, Missouri, through Houston to Beaumont-Orange, or in the reverse. Intervenors, on the same date, filed a separate petition to reopen Docket No. MC–59680 (Sub. No. 117) and reform the certificate. The gist of the complaint was that either the language used by the Commission in following the district court's remand properly proscribed service through Houston, in which case Strickland was violating the certificate, or if such language did not explicitly proscribe such operations, it was ambiguous in view of the Commission's duty to follow the order on remand, in which case the certificate should be further modified and made more specific so as to make it comply with the opinion, order, and mandate of the Court.

The proceeding was set for modified procedures by order of the Commission, dated June 10, 1965, and both intervenors and Strickland filed verified statements, together with exhibits. On February 16, 1965, the matter was referred to a Hearing Examiner for recommendation of an appropriate order. His report, filed March 17, 1965, found that Strickland's Sub. No. 117 certificate proscribed the operations Strickland was conducting and recommended issuance of a cease and desist order. He interpreted the modified provision "only points east of the Texas-Louisiana State line" as limiting Strickland to the transportation of traffic originating at or destined to Orange and Beaumont, which moved to or from one of its authorized points of service in Louisiana only. He, therefore, concluded that the transportation by Strickland of commodities moving to or from points east of a northerly extension of the Texas-Louisiana State line (e. g., St. Louis, Memphis, Detroit, Milwaukee, and Chicago) but which did not move through an authorized point on the Louisiana route was in violation of the certificate authority.

The majority of the Commission, in its report of June 13, 1966, reversed the examiner, finding that the operations being performed by Strickland were not outside the scope of the amended certificate. It further found, however, that the certificated authority did not conform to the district court's decree as had been intended and that " * * * we are bound by the opinion of the court and any broader grant of authority made contrary thereto, however unintended, would fail to meet its mandate or statutory requirements." 102 M.C.C. 291, 297. The Commission specifically found that its March 15, 1961, order was not consistent with the district court's remand to restrict Strickland's operations from or through Houston destined to Beaumont and Orange or in the reverse, a service for which the court found no need had been established. In correcting the error, the Commission concluded that it had no alternative but to issue a second amended certificate reflecting an appropriate modification in conformance with the court's mandate, which it did. The second modification after remand provided for service

"between Houston, Tex., and New Orleans, La., serving the intermediate points in Texas of Orange and Beaumont, with service at points in the Orange, Beaumont, and Houston commercial zones restricted to the transportation of traffic moving to or from points on the below described route in Louisiana * * *." 102 M.C.C. at 302.

Strickland's petition for reconsideration was denied, and the instant action was filed on February 20, 1967.

■ The singular issue before this court is whether by its 1961 order the Commission acted, for whatever reason, in a manner inconsistent with the mandate of the district court so that it might later modify the previously issued certificate to conform to the terms of the district court remand without having to comply with the hearing provisions of Sec. 212(a) of the Interstate Commerce

Act.[1] We believe the Commission was justified in so doing and would have been recreant had it done otherwise.

While it is true that the district court did not attempt to set forth its order "in terms having the precision of a certificate," it could not have been more explicit than it was in footnote 42, quoted supra, that it intended to restrict Strickland's service to and from Orange and Beaumont through Houston. The mandate of the district court was to deny Strickland any new authority to service Beaumont-Orange and points in between Beaumont-Orange and Houston (e. g., Liberty, Dayton, and Nome). On remand from the district court, the Commission announced that its findings "should be modified to conform to the decree of the court." The amended certificate, however, permitted and proscribed operations between Orange, Beaumont and Houston; and when this was brought to the attention of the Commission in the present action, the order was properly amended again. The question, then, of whether an error was made by the Commission on remand must be answered in the affirmative. We are confident that the Commission expressly intended to follow the mandate of the court as expressed in footnote 42. The Commission did not conceive or foresee this misconstruction of its order and should not be powerless to correct Strickland's legalistically imaginative but legally unwarranted construction.

■■ When a reviewing court has set aside administrative action found not supported by the evidence and has remanded the matter for further consistent proceedings, the Commission is without power to act except in accord with the court's mandate. Inland Steel Co. v. United States, 1939, 306 U.S. 153, 59 S.Ct. 415, 83 L.Ed. 557. By inadvertently fashioning a certificate inconsistent with the court's mandate, the Commission became bound to amend the certificate to conform to the mandate, whether it took two or two dozen later efforts to properly effectuate the court's order. Courts are not procedural pawns whose opinions can be frustrated through administrative misadventure. The Commission so comprehends and we should not confuse that comprehension. Here the agency seeks to conform to a court's opinion and all available accommodations should be summoned to fulfill optimum conformity.

It is not pride or arrogance that makes it important that echelons, tiers, and hierarchies of courts be more than tables of organization. Our judicial system is premised on tiered decisions. We are not dealing with the trivia of a pecking order but are concerned that the words of a higher court command the respect due them.

■ A tribunal has an inherent power to correct mistakes resulting from oversight or inadvertence. American Trucking Associations v. Frisco Transportation, 1958, 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172. In *Frisco*, the Supreme Court held that the Commission had the power to correct a certificate which originally contained certain limitations but, as a result of an inadvertent clerical error, was issued without such limitations. The Court emphasized, however, that this power extends only to reopening prior proceedings to correct a mistake and not to modifying a certificate to execute a policy change or newly developed policies. Chief Justice Warren, speaking

1. Sec. 212(a), Interstate Commerce Act, 49 U.S.C. § 312(a) provides in pertinent part:
   "(a) Certificates, permits, and licenses shall be effective from the date specified therein, and shall remain in effect until suspended or terminated as herein provided. Any such certificate, permit, or license may, upon application of the holder thereof, in the discretion of the Commission, be amended or revoked, in whole or in part, or may * * * after notice and hearing, be suspended, changed, or revoked, in whole or in part, for willful failure to comply with any provision of this chapter, or with any lawful order, rule, or regulation of the Commission promulgated thereunder, or with any term, condition, or limitation of such certificate, permit, or license: * * *"

for the court, pointed out that the Commission's enabling act provides that:

" 'The Commission shall conduct its proceedings under any provision of law in such manner as will best conduce to the proper dispatch of business and to the ends of justice.' This broad enabling statute, in our opinion, authorized the correction of inadvertent ministerial errors. To hold otherwise would be to say that once an error has occurred the Commission is powerless to take remedial steps. This would not, as Congress provided, 'best conduce to the ends of justice.' " 358 U.S. at 145, 79 S.Ct. at 177, 3 L.Ed.2d at 181.

In the recent case of Willey v. United States, E.D.Ill., 1965, 245 F.Supp. 669, the Court was faced with a similar situation in that the Commission's certificate granted broader authority than the evidence justified. Stating that the "case should be considered as one in which the Commission does have the power to revoke or modify a certificate," id. at 677, the court held that although the certificate is the final step in the administrative process, the Commission has power to revoke wholly or partially, without resort to Sec. 212(a), certificates issued as a result of inadvertence or mistake. The distinction, as viewed by the Illinois court, is one between conscious policy choice and, as in *Frisco,* "error in the administrative process of fashioning [a] certificate[s]." Id. at 676. In the instant case, in view of the Commission's express desire to conform to a clear mandate from the court and in view of its failure at first to effectively accomplish this, we hold that the Commission had the later power, upon learning of the error, to reform Strickland's certificate.

This problem was linguistic or semantic: whether the Commission had properly transcribed footnote 42 as a matter of words. No new theories were invoked, and no testimony or other evidence was required to confront the error. Further, Strickland and all other interested parties had full notice that the confrontation was to be undertaken by the Commission, and all parties appeared. They knew that the hearings would concern footnote 42 of the district court opinion, which was all they needed to know and all that the Commission dealt with. Section 212(a) should be summoned for a four-alarm fire, but not when one whiff from a fire extinguisher can quell the blaze.

The order of the Commission is hereby approved.

## DISSENTING OPINION

HUGHES, District Judge:

This case was brought by Strickland Transportation Company, hereinafter called Strickland, against the United States of America and the Interstate Commerce Commission, hereinafter called Commission, to "revise, enjoin, set aside, annul and suspend in whole or in part, a decision and order of the" [1] Commission, which Strickland alleges "revokes and diminishes in part the authority previously granted" [2] by the Commission to Strickland.

Central Freight Lines, Inc., Herrin Transportation Company, Roadway Express, Inc., Missouri-Pacific Railroad Company, and Southern Pacific Company intervened seeking to uphold the decision of the Commission. All intervenors will hereafter be referred to as Central.

In order to understand the issue in this case, it is necessary to review the various proceedings leading up to the order of the Commission involved herein.

In 1954 Strickland made application for an additional route to New Orleans from Houston, filed in Docket No. MC–59680 (Sub. No. 117).

On October 14, 1958 the Commission handed down its decision finding

"that the present and future public convenience and necessity require operation by applicant (Strickland) * * * between Houston, Texas and New Orleans, Louisiana, from Hous-

---

**1.** Complaint p. 1.

**2.** Complaint p. 6.

ton * * * to Kinder, Louisiana * * * to Baton Rouge, Louisiana * * * to New Orleans, and return over the same route, serving all intermediate points but with service at Baton Rouge restricted to traffic moving to or from points west of the Louisiana-Texas State line."[3]

Action to set aside the certificate granted to Strickland was brought in the U. S. District Court for the Southern District of Texas. T. S. C. Motor Freight Lines, Inc. et al. v. United States et al., 186 F.Supp. 777, 795 (S.D.Texas 1960). The Court upheld the Commission in part but held that in certain respects the order should be modified. The Court stated at 793 "there was no showing of inadequate service from Orange and Beaumont, on the one hand, and Houston on the other" and held at 793 that the question of

> "local service between Beaumont-Orange and Houston of shipments destined for or originating from such points is obviously a question on which evidence on the need for that particular service must be adduced."

The Court further held that "so much of the certificate granting authority for new service between Beaumont-Orange and Houston must be set aside."

Footnote 42 at 794 at this point in the decision states

> "under our holding, except for Strickland's existing authority, the applicants will not be permitted to engage in the following transportation:
>
> "(1) Service from or through Houston destined to Orange or any point between Houston and Beaumont, or in the reverse direction,
>
> "(2) service from or through Houston destined to Orange or any point between Houston and Orange, or in the reverse direction,
>
> "(3) service from points east of Orange-Beaumont destined to any in-

termediate point between Orange-Beaumont and Houston, or in the reverse direction. (This would not restrict, for example, a shipment from Baton Rouge to Orange or Beaumont, or the reverse.)"

The Court specifically stated in the footnote "we do not undertake to set this forth in terms having the precision of a certificate."

The only question considered in the opinion of the Court was the service between Houston, Beaumont-Orange, Baton Rouge and New Orleans, and intermediate points.

The Southern District Court was affirmed by the United States Supreme Court, Herrin Transp. Co. v. United States, 366 U.S. 419, 81 S.Ct. 1356 (1961). On remand the Commission on March 15, 1961 specifically stated as follows:

> "We conclude that the findings in the prior report herein should be modified to conform to the decision of the Court."[4]

Without adducing further evidence, the previous order was modified so as to provide:

> "no service at intermediate points in Texas except as follows: Serving the intermediate points of Orange and Beaumont, Texas, restricted to traffic moving to or from points east of the Texas-Louisiana State line."[5]

The Commission in amending the certificate stated,

> "In our judgment, the quoted language (in the footnote of the Court's opinion) forbids an authorization * * * to serve intermediate points in Texas other than Orange and Beaumont, and requires that authority to serve those points be restricted to traffic moving from or to points east of the Texas-Louisiana line."[6]

---

3. Exhibit B, p. 669 Complaint.

4. Exhibit C p. 563 Complaint.

5. Exhibit C p. 563 Complaint.

6. Exhibit C p. 563 Complaint.

Accordingly on June 26, 1961 the Sub. No. 117 Certificate was issued in accordance with the order of the Commission.[7]

It should be pointed out that the Court in eliminating

"service from points east of Orange-Beaumont destined to any intermediate point between Orange-Beaumont and Houston or in the reverse direction"[8]

did not state from what points the service would be allowed except to say in parenthesis that a shipment from Baton Rouge to Orange or Beaumont or the reverse would not be restricted. No petition for reconsideration of the report and order was filed by any protestant and such order became final upon the expiration of the time provided in the rules of practice of the Commission for the filing of a petition for reconsideration. Any contention that the modification of the authority as set forth in the report and order of March 15, 1961 did not in fact conform to the decree of the Court, could have been made by the filing of an appropriate petition for reconsideration within the time allowed by the rules of practice of the Commission.

On June 1, 1964 in Cause No. MC–4472, Central filed a complaint against Strickland Transportation Company alleging a violation of its certificate and praying for an order commanding the defendant to cease and desist from violations of the Act. It was contended that Strickland was engaged in providing unlawful transportation service to and from Beaumont and Orange, Texas and points in the commercial zones and terminal areas thereof on shipments to or through Houston, without moving such shipments physically across the state lines of Louisiana and Texas.

In this pleading Central prayed in the alternative that the certificate be modified, although the complaint states no cause of action in this regard and in fact makes no allegations with reference to such a change.

On the same date Central filed a petition asking that Docket MC–59680 (Sub. No. 117) be reopened. The petition deals almost wholly with alleged violations of the certificate. Only in the prayer does Central ask the following:

"an appropriate crder be entered in connection with the foregoing complaint reopening Docket No. 59680 (Sub. No. 117) for the purpose of considering in the light of the subsequently developed facts and contentions hereinabove alleged (which contentions were alleged notations) whether the terms, conditions and restrictions now contained in defendant Strickland's Certificate No. MC–59680 (Sub. No. 117) should be further modified and made more specific * * *."

As noted in the prayer, the petition is based on facts which developed after the 1961 report of the Commission and there is no contention that the Commission failed to consciously follow the Court's opinion.

On June 11, 1964 Strickland filed a motion to strike or in the alternative to deny the petition to reopen and reform the certificate in Docket No. MC–59680, Sub. No. 117. It was contended in the motion that since Rule 1.101(e) of the General Rules of Practice provide that a petition for reconsideration "must be filed within 30 days after the date of service of a decision or order", the petition must be rejected. Only good cause according to Strickland would excuse a timely motion for reconsideration, and no good cause had been alleged.

On July 13, 1964 Strickland filed a supplement to its motion to strike, or, in the alternative, to deny petition to reopen and reform certificate in Docket No. MC–59680, Sub. No. 117 on the ground that

"the Commission has no jurisdiction to modify, revoke, or change respondent's certificate MC–59680, Sub. 117 except under proceedings provided for

---

7. Exhibit D Complaint.

8. T. S. C. Motor Freight Lines, Inc v. United States, Footnote 42.

under Section 212(a) of the Interstate Commerce Act." [8]

On September 9, 1964 at a general session of the Interstate Commerce Commission "upon consideration of the record" the Commission entered an order in Cause No. MC–59680 (Sub. No. 117) in which it waived Rule 101(e) and accepted the petition of Central Freight Lines et al. for filing, overruled the motion of Strickland to strike the petition, and finally denied the petition "for the reason that no sufficient or proper cause appears for granting any of the relief therein sought." There was no hearing on the petition or motions.

With reference to the complaint of Central alleging a violation of its certificate, the Commission ordered Strickland to answer, and provided for statement of facts and argument by both parties.

In complainants' opening statement filed October 16, 1964 it was specifically stated

"This proceeding does not involve any question of revoking or changing defendant Strickland's certificate. The only issue here is: What service is authorized by the certificate?" [9]

On December 14, 1964 Strickland filed a motion to dismiss MC–C–4472 and on February 1, 1965 Central Freight Lines filed its reply to Strickland's motion to dismiss. The allegations in both pleadings deal with whether or not the operations of Strickland are within the scope of its authority. There is no contention that the amended certificate issued in 1961 was not in conformity with the order of the Court. Central's reply states

"The issue is a legal one, namely, whether such newly instituted operations by defendant Strickland are or are not 'in accordance with Certificate as issued in accordance with the Court's decision' ".[10]

The allegations and argument dealt with the interpretation of the phrase "restricted to traffic moving to and from points east of the Texas-Louisiana line." This provision was contained in the original certificate of 1958 and was not commented on by the Court. It was likewise contained in the amended order of 1961.

On February 16, 1965 the matter was referred to a Hearing Examiner for recommendation of an appropriate order thereon. His report filed March 17, 1965 found that Strickland had been and "was engaged in certain transportation not authorized by its certificates in violation of Section 206 of the Interstate Commerce Act." [11] A cease and desist order was recommended.

The Hearing Examiner interpreted the provision in the certificate "only points east of the Texas-Louisiana State line" as not including points north of the Texas-Arkansas State line, the most northerly point on the Texas-Louisiana State line being the intersection of the Texas-Arkansas State line. It was his opinion that the evidence was sufficient to warrant the conclusion that Strickland was conducting operations between Beaumont-Orange and points such as St. Louis, Memphis, Detroit, Milwaukee, and Chicago which would not be possible under his interpretation of Strickland's certificate.

8. Section 212(a) of the Interstate Commerce Act, 49 U.S.C. § 312(a), provides in pertinent part:

"Certificates, permits, and licenses shall be effective from the date specified therein, and shall remain in effect until suspended or terminated as herein provided. Any such certificate, permit, or license may, upon application of the holder thereof, in the discretion of the Commission, be amended or revoked, in whole or in part, or may after notice and hearing, be suspended, changed, or revoked, in whole or in part, for willful failure to comply with any provision of this part, or with any lawful order, rule, or regulation of the Commission promulgated thereunder, or with any term, condition, or limitation of such certificate, permit, or license: * * *"

9. Opening Statement of Central p. 9.

10. Strickland's Motion p. 2.

11. Hearing Examiner's Report filed March 17, 1965, p. 10.

On May 3, 1965 Strickland filed exceptions to the report and recommended order of the Hearing Examiner, and on June 8, 1965 Central replied to Strickland's exceptions. These two pleadings deal largely with the interpretation of Strickland's certificate, Strickland contending that the Hearing Examiner had incorrectly construed it, and Central arguing that the Hearing Examiner's recommended order simply clarified the certificate. For the first time Central raised the question of the ambiguity of the certificate, and need for clarification. In previous pleadings it was Central's contention that the certificate was clear and unambiguous and that Strickland was violating it. It now contends that there was need for clarification, and the Hearing Examiner's report is merely a clarification.

The recommendations of the Hearing Examiner were not adopted by the Commission. On June 13, 1966 in No. MC–C–4472 the Commission reversed the Examiner's finding that the operations being performed by Strickland were not outside the scope of the amended certificate. The complaint of Central which had alleged violation of the authority in its No. MC–59680 (Sub. No. 117) amended certificate was dismissed.

On the same date on its own motion, it reopened No. MC–59680 (Sub. No. 117) and without notice to the parties or a further hearing, it modified the certificate of Strickland to provide for service

"between Houston, Texas and New Orleans, Louisiana, serving the intermediate points in Texas of Orange and Beaumont with service at points in the Orange, Beaumont, and Houston commercial zones restricted to the transportation of traffic moving to or from points on the below described route in Louisiana, * * *." 12

The amended certificate substituted the words "on the below described route in Louisiana" for the words "east of the Texas-Louisiana State line" contained in the 1961 certificate. The Commission specifically held its action to be in furtherance of the Court's mandate.

Strickland's petition for reconsideration of the order of June 13, 1966 was denied (making the order administratively final) by an order of the Commission served January 30, 1967. The action in this Court was filed February 20, 1967.

The only question in this case is whether the action of the Commission in 1966 amending the certificate of Strickland falls within the scope of Section 212(a) of the Interstate Commerce Act. It is the contention of the Commission that in modifying the certificate it was merely making a second correction in a certificate issued subsequent to a remand by the Court in conformance with that remand.

It is my opinion that the action of the Commission falls within the scope of Section 212(a) and that notice and a hearing were required before Strickland's certificate could be changed.

The first attack on the 1961 certificate was made by Central in 1964, long after the time for reconsideration by the Commission or appeal to the Court. This petition was denied by the Commission without a hearing, leaving only Cause No. MC–C–4472 which was a complaint against Strickland alleging violations of the 1961 order.

In the hearing on the complaint, it was conceded by Central that the 1961 order was valid and there was no attack on the order as such. The 1966 order materially reduced the scope of Strickland's certificate restricting its service at points in the Orange, Beaumont and Houston commercial zones to the transportation of traffic moving to or from points on a certain route in Louisiana, whereas, the 1961 order had authorized Strickland to transport shipments between Orange and Beaumont on the one hand and on the other from points it is authorized to serve which are physically located east of the Texas-Louisiana line. The order under attack would prohibit Strickland from handling traffic unless it moved physical-

---

12. Form of amended certificate to be issued attached to Central's complaint.

ly over the "below described route in Louisiana," whereas, the 1961 order permitted Strickland to handle traffic which moved from points north of Louisiana if they were east of the Texas-Louisiana State line or a northerly extension thereof, on the one hand and on the other, Beaumont and Orange, without traversing any portion of Louisiana.

The case of American Trucking Ass'ns v. Frisco Transp. Co., 358 U.S. 133, 79 S.Ct. 170 (1958) is a leading case on the question of whether the Commission may change its order without complying with the provisions of Section 212(a).

In it the American Trucking Company made application to purchase the operating rights of several carriers. The hearing examiner recommended approval "subject to such further limitations, restrictions or modifications as the Commission may hereafter impose * * *." The Commission adopted the Examiner's recommendations including the above-quoted condition. Thereafter, compliance orders were issued which failed to include the condition adopted by the Commission, nor did the certificates issued to American contain such condition. In a subsequent proceeding it was shown that certificates are prepared by a staff section of the Commission which

"has no discretion to alter anything contained in the reports and is charged with the sole responsibility of transposing the Commission findings into certificate form. * * *"

Division 5 to whom the case had been referred reasoned that "the staff section of certificates obviously had made an inadvertent error in transposing the relevant findings." The full Commission agreed with Division 5 and the corrections ordered in the certificates.

The Supreme Court upheld the decision of the Commission. The question the Court said at p. 142, 79 S.Ct. at 175, was

"whether the omission of the restriction from the certificates was due to a conscious policy choice on the part of the Commission or, as found by it, to

error in the administrative process of fashioning the certificates."

The Court at p. 143, 79 S.Ct. at p. 176, found

"there is nothing in the record * * * to indicate that the Commission * * * instructed the staff to delete the restrictions and increase the scope of appellee's operation. This factor militates strongly in favor of the Commission's conclusion that the reservations inadvertently were omitted * * *."

From a review of all the facts, the Court concluded that the Commission was correct. Such certificates issued due to inadvertence could be modified by the Commission without resorting to Section 212 (a).

The Court continued at p. 146, 79 S. Ct. at p. 177

"Of course, the power to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful in the light of changing policies. * * * [t]o allow the reopening of proceedings in such a case under the pretext of correction would undercut the obvious purpose of § 212 of the Interstate Commerce Act * * * which makes the issuance of a certificate the final step in the administrative process. But nothing in that Section prohibits the correction of inadvertent errors. Here, as we have shown, the certificates issued to appellee mistakenly omitted an intended provision, and the Commission's subsequent action was not the execution of a newly adopted policy but, as it found in a proceeding in which appellants participated after notice, merely the correction of the inadvertence."

In the case before us the order of 1961 following remand cannot be said to have been an inadvertent error. After an examination of the Court's opinion, the Commission consciously determined that its previous report should be modified. Quoting from the opinion of the Court, it said,

"In our judgment the quoted language failed on authorization * * * to serve intermediate points in Texas other than Orange and Beaumont, and requires that authority to serve those points be restricted to traffic moving from or to points east of the Texas-Louisiana line." [13]

The 1966 order in Docket No. MC-59680 (Sub. No. 117) was not the correction of a clerical error or caused by an inadvertent act of the Commission in 1961. The Commission in 1961 acted after careful examination of the Court's opinion and the certificates issued only after a determination that it was following the Court's opinion.

Under such circumstances Section 212 (a) must be followed, notices issued, and a hearing had before a change can be made in the certificate. A case in point is Watson Bros. Transportation Co. v. United States, 132 F.Supp. 905 (D.C. 1956) aff'd 350 U.S. 927, 76 S.Ct. 302, 100 L.Ed. 810. At page 909 the District Court stated "The only statutory authority for the suspension, change or revocation of * * * a certificate by the Commission is contained in Section 212(a), Part II, of the Interstate Commerce Act." In the Watson case an order of the Commission issued without notice and hearing restricting the authority of the carrier with reference to the type of commodities it was authorized to haul was held by the Court to be void.

In a similar case, Movers Conference of America v. United States, 205 F.Supp. 82, 83, 1962 the Court held:

"We conclude that the proposed order does redefine 'household goods' in a manner different from the existing definition commonly accepted within the industry by both the carriers and the Commission. In our opinion, the proposed redefinition narrows the term 'household goods,' * * * Since the Commission proposes to do this by a procedure other than that set forth

in 49 U.S.C.A. § 312(a) the order is clearly erroneous * * *."

There can be no doubt that since the Commission's order of 1966 materially restricts the authority of Strickland, the action of the Commission in reopening Docket No. MC-59680 (Sub. No. 117) on its own motion without notice and hearing is void.

It might be contended that since Central had filed a petition to modify the certificate and in the complaint for violation had in the alternative asked for a modification, there was no need for the Commission to follow the procedure outlined by Section 212(a).

In order to determine whether a modification of the certificate had been considered, it is necessary to examine the record.

As heretofore stated, at the time the 1961 order was entered there was no contention that the order as modified did not conform to the decree of the Court. There was no appeal from the order and likewise there was a complete lack of any judicial attack upon the order until 1964, three years later, when Central filed a petition asking for a modification of the 1961 order. The petition was denied without any hearing or statement of facts by either party.

The complaint filed by Central at the same time as the petition for modification outlined with particularity alleged violations. Nothing was said in the body of the complaint about the certificate being ambiguous or not being in accord with the Court's decree. It was not until the prayer of the complaint that Central in the alternative prayed for a modification of the certificate.

After the filing of the complaint, statements submitted by the parties dealt exclusively with the alleged violations. Central specifically stated that the only question involved was the service authorized by the certificate.

It was not until the Hearing Examiner had recommended an order holding that

---

13. Exhibit C to Plaintiff's Complaint p. 563.

Strickland had violated the certificate that the question of its meaning was mentioned. While there was a contention by Central at that time that the order was ambiguous, it was not attacked as not being in conformity with the Court's order.

Therefore, the Commission's subsequent modification of the certificate was done without discussion by the parties as to whether it was in accord with the Court's opinion and without a hearing on the conditions and restrictions of any proposed change in the certificate.

It was contended by the Commission that in modifying the certificate, it was merely acting "in furtherance of the Court's mandate" and therefore its action did not "fall within the scope of Section 212 of the Act."

While it is my opinion that where there is a conscious determination of the Court's opinion, a certificate thus entered cannot be changed without following the provisions of Section 212(a), it can be argued that if the Commission was clearly wrong in interpreting the Court's opinion in 1961, it would have authority to modify the certificate without complying with the aforesaid section of the Act.

It is necessary therefore to carefully examine the opinion to determine what its holding was. The plaintiffs in the district court had two main contentions, the first with reference to the procedure of the Commission in issuing the certificate, and with this we are not concerned.

The second point dealt with the substantiality of the evidence, plaintiffs contending that granting the application was not bottomed or supported by substantial evidence viewing the record as a whole. The Court discussed in some detail the evidence relating to the existing service between Houston and New Orleans and between Houston and the principal intermediate points. With reference to the service from Orange and Beaumont on the one hand, and Houston on the other, the Court found there was no showing of inadequate service and in order to receive a grant of authority to

Strickland for such local service, "evidence on the need for that particular service must be adduced." (186 F.Supp. p. 793.) The Court then stated at p. 794 "so much of the certificate granting authority for new service between Beaumont-Orange and Houston must be set aside."

The concluding paragraph of the opinion states at p. 795 "Accordingly, the order is affirmed in part and set aside in part. Insofar as the order is set aside, the matter is remanded to the Commission for further consistent proceedings."

Footnote 42 has already been fully set out. It deals only with the restrictions on the service from or through Houston destined to Beaumont or Orange or to intermediate points between Orange-Beaumont and Houston, and on service from points east of Orange-Beaumont destined to any intermediate point between Orange-Beaumont or in the reverse direction.

There was no discussion in the entire opinion with regard to the remainder of the order. Therefore, it would appear that the only part of the Commission's order which it was directed to change was with regard to the service to Beaumont-Orange and intermediate points. The remainder of the Certificate was to be determined by the Commission and was not subject to restrictions by the Court. My conclusion is therefore that the certificate of 1961 is not contrary to the Court's order.

The Commission had authority to amend No. MC–59680 (Sub. No. 117) because of the remand order for "consistent proceedings". Such authority overcame any Section 212(a) requirements at that time. But to say that some years later, in a collateral proceeding, such authority would again overcome Section 212(a) is not correct. The order of March 15, 1961 amending Sub. No. 117 was according to the Commission's interpretation of what it thought the mandate of the Court meant. The issuance of the certificate by the Commission was the "final step in the Administrative process." American Trucking Ass'ns v. Unit-

ed States, 364 U.S. 1, 18, 80 S.Ct. 1570, 4 L.Ed.2d 1527 (1960).

The Commission was aware of the fact that its order of 1961 was final, no appeal having been taken, and undoubtedly it was for that reason that it denied Central's petition filed in 1964 to reopen Cause No. 59680 (Sub. No. 117). By contending that the amended order was in conformity with the Court's opinion, its action would have been legal if there had been a clerical or ministerial error in the 1961 order.

It is my conclusion that the Commission erred in issuing a second amended certificate, and the decision and order of June 13, 1966 are null and void.

## CONCURRING OPINION

TAYLOR, District Judge:

I concur in Judge Goldberg's opinion in this case. Plaintiff Strickland's transportation service between Houston, Texas and New Orleans, Louisiana, and to and from Beaumont and Orange, Texas, has been in controversy and litigation since October 14, 1958. Strickland has participated in all proceedings and has been fully aware of the controversy in regard to its transportation authority under the Certificates granted to it by the Interstate Commerce Commission. Strickland was as well aware of the judgment of the District Court for the Southern District of Texas and the limitations set forth therein as was any other party to the litigation. It is true that there was no appeal from the Commission's 1961 Order after remand by the District Court. However, Strickland made no attempt to take advantage of the authority granted by the Commission's 1961 Order and Certificate issued thereunder until 1964 when Central asked for a modification of that Certificate. While Sims Motor Transport Lines, Inc. v. United States, D.C., 183 F.Supp. 113, was an investigation proceeding, some of the language used therein is pertinent here, as follows:

"* * * [T]he orders plaintiff asks us to set aside take no rights from it, but merely interpret what rights it had from the beginning. It is apparent from the record that defendant Commission has not sought to diminish or modify, under the guise of interpretative action, or otherwise, [the District Court's opinion] but has rather endeavored to provide a reasonable and fair construction of the same. Since we are here concerned with the review of an interpretation proceeding, neither Section 312(a), nor Watson Bros. Transportation Co. v. United States, D.C., 132 F.Supp. 905, are applicable."

183 F.Supp. 113, at 117.

Paraphrasing further from that Opinion, there is no evidence in any of the basic proceedings which have been reviewed which could support a finding that when the various certificates or any of them were issued it was contemplated or intended that Strickland was being granted authority denied by the District Court for the Southern District of Texas.

It is my opinion that Section 212(a) is not applicable here.